## Staunton.

### Pocahontas Collieries Company v. Williams.

September 13, 1906.

1. Trial—*Order of Introducing Evidence—Introduction After Demurrer to Evidence—Case at Bar.*—A large latitude is allowed trial courts in controlling the order in which proofs shall be introduced before them, and it would be a most unusual case in which a judgment of the trial court would be reversed for that cause alone. In the present case, the plaintiff having rested his case, the defendant demurred to the evidence, after which, but before formal joinder in the demurrer, the court permitted the plaintiff, over defendant's objection, to read a deposition taken but not read by the defendant, as provided by section 3367 of the Code of 1887, the defendant having also introduced further evidence. After the deposition was read the defendant again demurred to the evidence.

   *Held*: Under the circumstances, the defendant being in no respect prejudiced by the reading of the deposition at the time at which it was read, there was no reversible error in permitting it to be so read.

2. Master and Servant—*Injury to Servant—Duty of Master to Warn Servant—Contributory Negligence of Fellow-Servant.*—The question whether a servant injured while employed in a dangerous place should have been warned of the danger by the master is always for the jury upon the evidence. In the case at bar the plaintiff, an inexperienced miner, was injured by a fall of coal caused by a fellow-servant's working with a pick in the side of the mine, combined with the effect of a recent blast in loosening the coal, the blast having been fired during a brief absence of the plaintiff from the mine and without his knowledge. Under the circumstances, it cannot be said as a matter of law that the jury would not have been warranted in holding it to have been the duty of the defendant's mine foreman, knowing of plaintiff's inexperience, to warn him of the changed and dangerous condition of the mine, and that the injury was partly attributable to his failure to do so. Under

such circumstances the negligence of the master entering into and constituting a part of the negligent act which caused the injury, the master is liable as though he only were at fault.

Error to a judgment of the Circuit Court of Tazewell county, in an action of trespass on the case.   Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Rucker, Anderson, Strother & Hughes* and *Greever & Gillespie,* for plaintiff in error.

*Henry & Graham,* for defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action from the Circuit Court of Tazewell county, brought by William Williams to recover damages from the Pocahontas Collieries Company for a personal injury received by him while working as a miner in the employment of the company.

The evidence tends to prove that Williams and one Grant Poe applied to the Collieries Company for employment.   Their first interview on the subject was with P. S. King, who was at that time mine foreman of the Pocahontas Collieries Company. Williams was wholly unacquainted with coal mining, but had done some work at the Bertha zinc mines.   Grant Poe had been formerly employed by the Pocahontas Company, and had had some experience as a coal miner, and the evidence tends to prove that Poe, in the presence of Williams, waived instructions from King and assumed the responsibility of going to work, relying upon his former experience.   They were set to work on

Saturday preceding the accident, placing props in the mine at points designated by chalk marks made by King. Sunday intervening, they again went to work setting props on Monday morning. In the chamber, or that part of the mine in which the accident occurred, there was at work a Hungarian named Joe Mances. Williams was in the act of putting props under the slate roof at the point which had been designated by chalk marks; his companion, or "Buddie," as he was known, was cutting wedges to insert between the props and the slate roof; and at some distance in front of them, variously estimated at from a few feet to fifteen or twenty feet, Mances was at work with a pick, endeavoring to throw down the coal on the side of the mine. It seems that in the morning, before the arrival of Williams and Poe, a shot or blast had been put into the side of the mine, which had been set off, with the effect of loosening a mass of coal which did not fall. Neither Poe nor Williams were aware that this shot had been fired, or that the coal was loose. King, the mine forman, did know of it. He knew that during the morning this blast had been shot off, and he knew that it very generally happened that while a part of the coal was thrown down by the blast, other coal was loosened by it which did not fall. Joe Mances, working away at the coal, as we have described, endeavoring to throw it down, a quantity of it fell and caught Williams, breaking his leg in two places.

At the trial the plaintiff introduced himself, Grant Poe, and his surgeon, and rested his case. Thereupon the Pocahontas Company demurred to the evidence, and one of counsel for plaintiff remarked, "All right," or "Very well," or words to that effect, and desired time for consultation. After a short recess the court convened, and counsel for the plaintiff then stated to the court that the defendant had taken and filed the deposition of P. S. King; that the deposition had not been read

by the defendant; and that the plaintiff desired to read the deposition to the jury; to which the defendant, by counsel, objected. The court then asked the plaintiff whether he knew the deposition of King had been taken and filed, or whether he was taken by surprise, to which the plaintiff, by counsel, stated that he knew that said deposition had been taken and filed, and that he had not been taken by surprise, but had relied upon defendant to read it. Thereupon the court overruled the objection and the deposition was read to the jury, to which ruling of the court the defendant excepted, and the judge signed the first bill of exceptions.

Upon the demurrer to the evidence the jury rendered a verdict of $1,500.00 in favor of the plaintiff, upon which the court entered judgment; and to this action of the court the defendant again excepted and tendered its second bill of exceptions, which was made a part of the record.

Section 3367 of the Code provides that a deposition, if not read on the trial by the party taking it, may be read by the other party. There can be no doubt, therefore, that the plaintiff might have read this deposition in the first instance. It is equally certain that the defendant was in no respect prejudiced by the plaintiff's reading it at the time it was done, instead of doing so before the announcement was made that the case was closed.

A large latitude is allowed the trial courts in controlling the order in which proofs shall be introduced before them, and it would be a most unusual case (though we do not mean to say one might not occur) in which the judgment of the trial court would be reversed for that cause alone. It is true that after the plaintiff rested, the defendant, to maintain the issue on its part, recalled William Williams, the plaintiff, to the witness stand and asked him a number of questions, and introduced as

a witness on its own behalf Dr. L. J. Stump; and after this plaintiff was allowed to read the deposition of P. S. King. When the deposition was read, the defendant again demurred to the evidence, and under such circumstances we cannot think that the first bill of exceptions disclosed any reversible error.

In our view of the evidence, the responsibility of the defendant company turns upon a very narrow point. The defendant knew that Williams was wholly ignorant of mining; it knew that on Monday morning before he went to work a change in the condition of the mine had taken place, accompanied with more or less danger; that a hole had been drilled in the side of the mine into which a blast of powder had been introduced; that it had been fired; that the coal had not fallen; and that it had been loosened by the effects of the blast.

The question of whether the servant should have been warned is always for the jury upon the evidence.

"It is the duty of the master to inform an inexperienced servant of the dangers ordinarily incident to the service, and if he fails to do so, and the servant has no opportunity to learn of them, he will not be held to assume risks not obvious to one of his age, experience and judgment." *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 27 S. E. 509.

This seems to be a stronger case, for here was a specific source of danger arising after the servant, known to the master to be wholly inexperienced, had left work on Saturday, and occurring Monday morning before his return. We cannot say as a matter of law, that under such circumstances, the jury were not warranted in holding it to have been the duty of King, the mine foreman, to call the attention of Williams and Poe to the changed situation and its dangerous character.

But it is said that the accident was caused by Joe Mances, a fellow-servant of Williams. It may be true that the coal

would not have fallen but for the efforts of Joe Mances, but it is entirely reasonable to suppose that the coal along the side of the mine, extending, according to the evidence, from ten to fifteen feet, would not have been thrown down by the miner's pick at such a distance had it not been loosened by the effect of the blast. We then have two concurring causes, with respect to one of which—that is to say, the effect of the blast in loosening the coal—the jury may have considered that it was the duty of King to have given warning to Williams, and that the injury was partly attributable to his failure to do so; and in that aspect of the case it would come within the influence of *Virginia & Southwestern Ry. Co.* v. *Bailey,* 103 Va. 226, 49 S. E. 33, where it was held, approving the law as stated in *N. & W. Ry. Co.* v. *Nuckols,* 91 Va. 193, 21 S. E. 342, that if the negligence of the vice-principal entered into and constituted a part of the negligent act which caused the injury, then the courts will not undertake to distribute the fault, but will hold the railroad company responsible, as though it alone were guilty.

Upon the whole case, we are of opinion that the judgment should be affirmed.

*Affirmed.*