Statement.

## Richmond.

### MILLBORO LUMBER CO., INC. V. DONALD.

#### November 16, 1916.

1. PLEADING—*Declaration—Sufficiency.*—A declaration in an action of a servant against his master which sets forth sufficient facts to show the relation between the plaintiff and the defendant, the legal duty owing from one to the other, the breach of that duty by the defendant, and the damages resulting therefrom to the plaintiff, is good on demurrer.

2. MASTER AND SERVANT—*Vice-Principal—Negligence.*—A servant who is charged with the duty of supplying and maintaining suitable instrumentalities with which other servants are to work, and of performing the non-assignable duties of the master, is a vice-principal, and the master is liable for damages proximately resulting from his negligent performance of the duties devolved upon him.

3. MASTER AND SERVANT—*Obedience of Servant.*—The promise of the servant to obey the lawful and reasonable orders of his master, within the scope of his contract, is implied by law, and he must obey unless the act be one obviously attended by such danger that a man of common prudence would not undertake it.

4. VERDICTS—*Conflicting Evidence.*—The verdict of the jury is conclusive upon a question of fact submitted to them upon conflicting evidence.

Error to a judgment of the Circuit Court of Bath county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*George A. Revercomb* and *H. H. Byrd,* for the plaintiff in error.

*Curry & Curry* and *Timberlake & Nelson,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The plaintiff, T. G. Donald, brought this action to recover of the defendant lumber company damages for personal injuries alleged to have been suffered in consequence of its negligence.

Viewed, as this case must be in this court, from the standpoint of a demurrer to the evidence, it appears that the Millboro Lumber Company, Inc., was, when plaintiff was employed, building a large band saw-mill, with all necessary modern equipments and appurtenances; that R. E. McCamey, a mill builder of large experience in the construction of such plants, was in charge of the work, employing the necessary labor and generally superintending and directing such labor in their work. On the 1st day of May, 1914, McCamey employed the plaintiff, Donald, a young man about twenty-five years of age, who had lived all of his life on a farm and was wholly without experience in the work upon which he was then entering. At the time of the injuries complained of, McCamey was engaged in the construction of a slab conveyor, which ran from the saw-mill to the furnace, a distance of 150 to 200 yards. This slab conveyor increased in height from the mill to the furnace, where it was thirty-five feet from the ground, and consisted of a succession of trestle frames or bents about eleven feet apart, with planks nailed on top. These bents were made on the ground and raised to the desired position by a block and tackle, and steadied by a guy rope which was fastened to a snubbing post on the ground.

About three days before the accident, which occurred May 16, 1914, the plaintiff was put to work with those engaged in the erection of this slab conveyor, which was completed with the exception of two bents. A bent had been raised at the furnace and secured in its place, leaving a space for the last two bents. On account of the height and the narrowness of the space left in which to work three blocks and tackles were used in completing these last two bents. This operation created a stretch of three ropes, each an inch in diameter, lying close together across the intervening space between the last bent on the mill side and the bent on the furnace end of the trestle, a distance of twenty-four feet. These two trestles had been gotten into position, and it became necessary to put the boards on and nail them down. The plaintiff and a fellow workman were on top of the bent next to the furnace and Huffman was on the last bent coming from the mill. McCamey, the foreman in charge of the work, was on the ground superintending the fastening and attaching of the block and tackle hooks below. The plaintiff says that he had nothing to do with fastening any of these ropes or with handling the tackle or attachments; that his duty was, when a bent had been raised, to shove a board across and nail it to keep the trestle from falling. There being no other boards on the side next to the furnace where the plaintiff was located, McCamey called to the plaintiff and directed him to go across and help Huffman to put on a large board which he could not handle by himself. The plaintiff could have gotten to where Huffman was by going back to the furnace down a ladder to the ground and over the intervening space to another ladder which led up to the top of the slab conveyor on the side where Huffman was, in all a considerable distance. This he started to do when McCamey again called to him and directed him to go across the ropes. The plaintiff asked McCamey if that was safe, and he replied

that it was, to go on across. These three large ropes, lying close together, were perfectly tight and apparently secure. This method of crossing was accomplished by sitting astride the ropes, and as expressed in the record, "cooning" across. The plaintiff, believing from appearances that it was safe, and relying upon the assurance of McCamey that it was, proceeded to obey the order that had been given him. As soon as he straddled the ropes and sat down, they immediately came loose and he fell to the ground, a distance of thirty feet or more, and received the severe injuries for which he is now asking compensation.

It is clear from the evidence that the accident happened in consequence of defective fastening of the ropes, and it is also quite clear that it was the inadequate fastening of the controlling rope on the ground, which was under McCamey's immediate supervision and direction, which slackened and caused the rope above to come unhooked. The rope above could not have come unhooked unless the controlling rope on the ground was loosened or slackened. The details as to how the ropes came loose are, however, immaterial. It was the duty of the master to furnish the plaintiff with reasonably safe appliances with which to perform the duty he was ordered to perform. It was the alleged neglect of this duty that caused the injuries sustained by the plaintiff.  .

Upon the trial of this case there was a direct conflict of evidence upon most of the material points. This conflict was determined by the verdict of the jury for $2,500 in favor of the plaintiff, upon which the judgment was entered that we are now asked to review.

We are of opinion that the demurrer to the declaration was properly overruled. It shows the relation between the plaintiff and the defendant, the legal duty owing from the one to the other, the breach of that duty by the defendant and the damage resulting to the plaintiff from such breach.

20           .

No more was necessary. *Hortenstein* v. *Virginia-Carolina Ry. Co.,* 102 Va. 914, 47 S. E. 996.

The defendant company assigns as error the action ·of the court in refusing to give the ninth instruction asked for by it, which tells the jury, "that if they believe from the evidence that the plaintiff and R. E. McCamey were both in the service of the Millboro Lumber Company, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, that then the said R. E. McCamey and the plaintiff are fellow servants and take the risk of each other's negligence, and if the plaintiff was injured by the negligence or carelessness of R. E. McCamey, then the plaintiff cannot recover and the jury should find a verdict in favor of the defendant."

There is no conflict in the evidence upon the question involved in this instruction. The defendant did not introduce a word of evidence tending to show that the plaintiff was a fellow servant of R. E. McCamey. On the contrary, the trial proceeded upon the theory that R. E. McCamey was in full charge of the work, performing the nonassignable duties of the master. All the evidence in the case bearing on the subject shows that McCamey was the agent and representative of the company, and that his act of negligence in failing to supply and maintain suitable instrumentalities for the work required of the plaintiff by him, was a breach of duty for which the master was liable.

The defendant's third instruction, which was given, is as follows: "The court further instructs the jury that the plaintiff, T. G. Donald, must prove by a preponderance of the evidence that R. E. McCamey, who was in charge of the work of constructing the slab conveyor, directed or ordered the plaintiff to cross from one of the trestles or bents to the other on the tackle rope, and that unless the

plaintiff proves this fact by a preponderance of the evidence the jury should find a verdict in favor of the defendant company." This instruction admits that McCamey was in charge of the work, and in effect tells the jury that if the plaintiff showed by a preponderance of the evidence that McCamey ordered the plaintiff to cross over on the ropes, the company was liable. This would not have been the case if McCamey had merely been a fellow servant of the plaintiff.

Instruction No. 9, which was refused, was in conflict with instruction No. 3, given at the request of the defendant, and under the facts shown of record the defendant could not have been prejudiced by its refusal.

Objection is taken by the defendant company to the action of the court in giving, over its protest, instruction No. 2 asked for by the plaintiff, which is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff was a servant of the defendant company and that he was ordered by a representative of the company in authority over him to go from where he was on a 'bent' or trestle section to another 'bent' or trestle section on the three block and tackle ropes connecting said 'bents' or trestle sections, then it was the duty of the plaintiff to obey such order unless the act was one obviously attended by such danger that a man of common prudence would not have undertaken it."

There is no error in this instruction. It is based on the evidence and sustained by abundant authority. It is a necessary and primary element in every contract of service that the servant will obey the commands of his master. The promise of the servant to obey the lawful and reasonable orders of his master, within the scope of his contract, is implied by law, and he must obey unless the act be one obviously attended by such danger that a man of common prudence would not undertake it. 1 Labatt M. & S. (2nd

ed.) 273; *N. & W. Ry. Co.* v. *Ward,* 90 Va. 687; 19 S. E. 849, 24 L. R. A. 717, 44 Am. St. Rep. 945; *N. & W. Ry. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226, *Black* v. *Portland Cement Co.,* 106 Va. 121, 55 S. E. 587.

"The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the negligence of the master, it is but meet that he should be recompensed." *Patterson* v. *Pittsburg &c. R. Co.* 76 Pa. 389, 18 Am. Rep. 412. Labatt M. & S., sec. 440.

The defendant insists that "cooning" across the ropes from one trestle to another was an act so obviously dangerous that no prudent man would have attempted it. The record does not sustain this view. To say the least of it, the evidence on the subject was conflicting and the defendant, by its instruction No. 5, which was given, submitted the question to the jury, and their verdict in favor of the plaintiff is the end of that controversy.

We are of opinion that the case was fully and fairly submitted to the jury, upon evidence amply sufficient to sustain their conclusion, and that upon well settled principles their verdict cannot be disturbed. The judgment complained of must, therefore, be affirmed.

*Affirmed.*