## Staunton.

## LYNCHBURG FOUNDRY COMPANY V. DALTON.

### September 20, 1917.

1. APPEAL AND ERROR—*Pleadings—Demurrer to the Evidence—Record.*—Acts 1916, chapter 406, page 708, abolishing bills of exception, has no application to the pleadings which are *per se* a part of the record. A demurrer to the evidence is as much a part of the record as any other pleading, and hence is not affected by the act aforesaid.

2. DEMURRER TO THE EVIDENCE—*Inconsistencies in the Evidence.*—Where the testimony of some of the plaintiff's witnesses was not altogether consistent with the testimony of the plaintiff himself, upon a demurrer to the evidence, these inconsistencies must be resolved in favor of the plaintiff, as the jury might have properly so found.

3. MASTER AND SERVANT—*Injury to Servant—Duty of Master—Rules for Conduct of Business.*—Where machinery is of a very simple character and the manner of its use open and obvious to the most casual observer, there is no need for the master to publish general rules for the government of the business.

4. MASTER AND SERVANT—*Injury to Servant—Obedience to Orders—Contributory Negligence.*—The primary duty of the servant is obedience to the orders of the master, and if, when in discharge of that duty, he is injured in consequence of such obedience, he may recover of the master unless the danger is so manifest that a reasonably prudent man would not have encountered it. But obedience to the master's orders will not excuse the servant's negligence in the execution of the orders.

5. MASTER AND SERVANT—*Injury to Servant—Duty of Servant.*—It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernable by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work where there is danger. He must inform himself.

6. MASTER AND SERVANT—*Injury to Servant—Duty of Master to Warn Servant.*—The law does not make it the duty of a master to warn a servant of an open and obvious danger of which he knows, or could have known by the exercise of ordinary care. Such dangers are risks incident to the employment.

7. FELLOW SERVANTS—*Who Are.*—Employees of a foundry engaged in loading iron pipe upon a railroad car are fellow servants, and if one of them is injured through the negligence of the other, he cannot recover from the master.

8. FELLOW SERVANTS—*Vice-Principal.*—The duty of giving suitable special orders necessary to the safety of the service is enumerated as one of the non-assignable duties of the master. Any servant to whom that duty is delegated is, while engaged in its performance, a vice-principal.

9. MASTER AND SERVANT—*Injury to Servant—Duty to Give Warning—Questions of Law and Fact.*—Where the alleged cause of danger is so open and obvious, and the opportunity or knowledge on the part of the employee is so complete as to leave no doubt that he knew, or should have known all about it, the question of whether he should have been warned is one of law for the court.

10. MASTER AND SERVANT—*Injury to Servant—Contributory Negligence of Servant—Case at Bar.*—Plaintiff was employed by the defendant foundry company, when not engaged in the shop, to load all kind of pipe upon cars. Pipe were loaded by means of an engine, with a boom or crane. Extending out, and attached thereto, was a block, and to the end of the block was fastened a hook. Separate and apart from the boom was a ring to which two chains were permanently fastened. To the other end of each chain was fastened a large hook. On the morning of the injury plaintiff was engaged as "ground" man in loading a "special" pipe, for which only one chain was needed and he had been instructed to hang the unused chain in the ring. This he failed to do, as he found both hooks already hung in the ring, and while plaintiff, in obedience to orders, with both hands on the pipe, was shoving it into the door of the car, as he had been directed by the company to do, the unused chain became detached and fell, striking one of his hands and causing the injury for which the action was brought. Plaintiff knew that if the extra chain was not properly hooked up, and came in contact with the top of the car it would probably be knocked out and the chain would fall.

Held: That it was plaintiff's duty to hang up the extra chain and so hang it as not to cause injury to himself. This duty

61

he neglected to perform, and his resulting injury is to be attributed to his own negligence and not to the negligence of his master.

Error to a judgment of the Corporation Court of the city of Radford, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The plaintiff in error, hereinafter called the Foundry Company, was engaged in the manufacture and sale of iron pipe, and employed the defendant in error, who was nineteen years of age at the time of the injury hereinafter mentioned, to "load all kind of pipe" when not engaged in the shop. At the time of the injury he had been in the employment of the Foundry Company continuously for four or five months, and about one-fourth of this time was devoted to loading "special" pipe, such as was being loaded when he was injured, but all the "specials" he had loaded had been in open cars, and he had never before loaded a "special" in a box car, nor had he ever seen one loaded in a box car. He had, however, "loaded some long pipe in the box cars." The joints or elbows were known as "specials," the other pipes were simply designated long pipe. He had loaded "specials" about a week in open cars, and long pipe for three weeks, some of the latter being loaded in box cars.

Pipe were loaded by means of an engine, with a boom or crane. Extending out, and attached thereto, was a block, and to the end of the block was fastened a hook. Separate and apart from the boom was a ring to which two chains were permanently fastened; each of the chains being about eight feet long, and weighing about 75 pounds. To the other end of each chain was fastened a large hook. In loading all straight pipe and also in loading heavy "specials" both chains were used. The ring to which the two

.chains were fastened was placed over the hook at the end of the boom.  In loading straight pipe, the two chains hanging down were fastened one in each end of the pipe, but in loading small "specials," such as were being loaded at the time of the injury, only one chain was used and the other was sometimes hooked back in the ring at the other end of the chain, and sometimes it was left swinging down, and at other times it was dropped loose into the end of the "special" which was being loaded.  Dalton had been instructed to hang the hooks up in the ring, but on the morning of the accident he found both hooks already hung up in the ring, and he simply "taken one out" to use in loading in the "specials."  When the point of the hook was turned from the car in which the "specials" were to be loaded there was no danger of its being knocked off if the chain came in contact with the car, but when the point was turned towards the car such danger did exist, though during the four or five months Dalton had worked there he had never seen the chains fall, nor heard of their falling, and the manager of the Foundry Company, who had been in its employment for ten years and on the yard several hours every day, had never seen the chains fall, nor heard of their falling.  Another employee of the company, testifying for Dalton, says the chains had fallen once or twice during his three years of service, and still another testifies that the chains occasionally fell, but neither of them claims to have notified the Foundry Company, nor is there any evidence that the company ever had such notice, or any knowledge of the falling of the chains.  Dalton, however, knew that if the extra chain was not properly hooked up, and came in contact with the top of the car it would probably be knocked out and the chain would fall.  On this point he testified as follows:

"Q. Mr. Dalton, you know, as a matter of fact, that if you have a ring with a hook in it and something comes ·down and catches that hook it is going to fall out? A. If the crane jerks it out .and hits the car of course it is.

"Q. I am speaking of the hook in the ring, if it hits something, it is going to knock it off? A. Certainly, if it hits a car and comes in that way, it is going to knock it off.

"Q. That is a matter of common knowledge, if it hits it on the side? A. If it comes in like that and hits it like that (indicating). That is the first time I ever seen it.

"Q. If they hit the ring that way, it is going to bound out? A. I guess it would."

On the morning of the injury Dalton was engaged as "ground" man in loading a "special," that is, a twenty inch pipe about six feet long and in the shape of an elbow, into a box car, and had taken down one chain and had fastened it to the pipe, and the other chain was left by him hanging in the ring at the end of the boom. He was instructed by the company to hang the unused chain in the ring in loading "specials." After the pipe had been raised by the crane and carried to the car, Dalton, with both hands on the pipe, was shoving it into the door as he had been directed by the company to do, when the chain became detached and fell, striking one of his hands, and mashing off one finger and injuring another, and for this injury this action was brought.

*Caskie & Caskie,* for the plaintiff in error.

*H. C. Tyler,* for the defendant in error.

Burks, J. (after making the foregoing statement) delivered the opinion of the court.

We are met at the outset of this case with a motion to dismiss because the record is not certified as required by an act of assembly approved March 21, 1916, (Acts, 1916, ch. 406, p. 708) abolishing bills of exception. It is sufficient to say that the act has no application to the pleadings which are *per se* a part of the record, and that a demurrer to the evidence is as much a part of the record as any other pleading, and hence is not affected by the act aforesaid. *C. & O. Ry. Co.* v. *Sparrow*, 98 Va. 630, 37 S. E. 302.

After the plaintiff had introduced his evidence, the Foundry Company introduced a single witness to prove an uncontroverted fact, and then demurred to the evidence. There was no real conflict between the evidence of the plaintiff and that of the defendant, but the testimony of some of the plaintiff's witnesses was not altogether consistent with the testimony of the plaintiff himself. These inconsistencies, however, must be resolved in favor of the plaintiff, as the jury might have properly so found. *Bass* v. *Norfolk Ry. Co.*, 100 Va. 1, 40 S. E. 100; *Ches. & O. Ry. Co.* v. *Pierce*, 103 Va. 99, 48 S. E. 534; Burks Pl. & Pr., p. 495, and cases cited.

The plaintiff's position, both in the trial court and in this court is stated by his counsel thus: "While it is true the plaintiff is young, it is not contended that his failure to discover the latent danger was due to immature years, but to his lack of experience in loading pipe into a box car, and that there was nothing in the condition surrounding the injury to him that would have caused a man of mature years to suspect the chain would fall unless he knew that the boom would strike the car."

Argument of counsel has taken a very wide range, and they have shown a commendable zeal in the citation of authorities, but it is not deemed necessary to go so extensively into the law of master and servant to arrive at a proper conclusion. It is not claimed that the machinery

was complicated, nor that it was in any way defective, nor that it was inadequate for the purpose. The claim of the plaintiff is that he should have been notified how to hook up the chain not in use, and the danger in not so hooking it, or else that a boom with only one chain attached should have been provided for that kind of work; that he should have been warned of the danger of the hook being knocked off by coming in contact with the top of the car when loading into a box car, and not instructed to "keep his hands on the pipe."

The machinery was of a very simple character and the manner of its use open and obvious to the most casual observer. There was no need, therefore, to publish general rules for the government of the business. *Moore Lime Co.* v. *Richardson,* 95 Va. 326, 28 S. E. 334, 64 Am. St. Rep. 735.

Much stress is laid upon the statement of the plaintiff that he was instructed to keep his hand on the pipe while loading "specials" in a box car, so as to guide it into the door, and that the plaintiff was simply obeying orders. Doubt is cast upon this statement by the testimony of one of the plaintiff's witnesses, that they were cautioned "every time we changed jobs to be careful," and to "keep out from everything," and that it was unreasonable to suppose that the plaintiff could have worked there four or five months without hearing of such caution. Assuming, however, that the jury might have found in accordance with the plaintiff's testimony, we still do not think he was entitled to recover. Undoubtedly, the primary duty of the servant is obedience to the orders of the master, and if, when in discharge of that duty, he is injured in consequence of such obedience, he may recover of the master unless the danger is so manifest that a reasonably prudent man would not have encountered it. *Millboro Lumber Co.* v. *Donald,* 120 Va., 150 90 S. E. 618; *U. S. Leather Co.* v. *Showalter,* 113 Va. 479, 74 S. E. 400, and cases cited.

The exception, however, in cases of open and obvious danger is as well established as the rule itself. *Norfolk & W. Ry. Co.* v. *Ward,* 90 Va. 687, 19 S. E. 849, 24 L. R. A. 717, 44 Am. St. Rep. 945; *Norfolk & W. Ry. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226; *Robinson* v. *Dininny,* 96 Va. 41, 30 S. E. 442; *Mason* v. *Post,* 105 Va. 494, 54 S. E. 311, 11 L. R. A. (N. S.) 1038; *Clinchfield Coal Corp.* v. *Cruise,* 117 Va. 645, 86 S. E. 135; *Reid* v. *Medley,* 118 Va. 462, 87 S. E. 616.

When it is said, in stating the rule above mentioned, that the master is liable "unless the danger is so manifest that a reasonably prudent man would not encounter it," it must be understood as meaning that a reasonably prudent man would not *under the circumstances of the case,* or that a reasonably prudent man, possessed of such knowledge as the servant had, or was properly chargeable with, would not have encountered it. Moreover, in the application of the rule, the servant himself must not have been guilty of negligence proximately contributing to his injury which rendered unavailing the master's orders. Obedience to the master's orders will not excuse negligence in the execution of the orders.

In the instant case, it was the duty of the plaintiff, as the "ground man," to hang up the extra chain and so to hang it as not to cause injury to himself. The fact that the chains would come in contact with the box car when loading into it, and that they *must* come in contact with it, would seem to be a plain proposition of common sense, but it must have been actually demonstrated to the plaintiff during the time he was loading straight pipe into the box car. These were physical facts open to his observation. He knew, therefore, before he was injured that the chains would come in contact with the car, and it was manifest that if the hook was turned to the car and came in contact with it, it was liable to be knocked out of the ring and al-

low the chain to fall. He admits that he knew that the hook would be knocked out if it came in contact with the car while the point of the hook was turned in that direction. It was his duty, therefore, so to hook the chain that it could not fall. This duty he neglected to perform, and his resulting injury is to be attributed to his own negligence and not to the negligence of the Foundry Company which furnished him a safe appliance, and a safe place in which to work, which was only rendered unsafe by the negligent manner in which he discharged the duty assigned to him. He would have suffered no injury in obeying the orders of the superintendent "to keep his hands on the pipe" if he had properly hooked up the extra chain. The order of the master was based upon the assumption that he would properly discharge the duty that had been imposed upon him.

The place and the appliance furnished by the master were reasonably safe in the first instance, and the master's order subjected the plaintiff to no hidden or unseen danger. The danger of doing the work in the manner in which it was done was open and obvious to even a casual observer. But the plaintiff was no casual observer. He had loaded straight pipe into box cars before, and although both chains were then used, he must have seen, or certainly ought to have seen, that the chains necessarily came in contact with the car.

"It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernable by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work where there is danger. He must inform himself. This is the law everywhere." *Russell Creek Coal Co.* v. *Wells*, 96

Va. 416, 31 S. E. 614; *Bowles* v. *Soapstone Co.,* 115 Va. 701, 80 S. E. 799; *Va. Iron, Coal & Coke Co.* v. *Asbury,* 117 Va. 683, 86 S. E. 148.

"The law does not make it the duty of a master to warn a servant of an open and obvious danger of which he knows, or could have known by the exercise of ordinary care. Such dangers are risks incident to the employment." *Fields* v. *Virginian Ry. Co.,* 114 Va. 558, 77 S. E. 501; *Reid* v. *Medley, supra.*

The case comes within the rule above stated, that obedience to the master's orders does not excuse the servant for encountering an open and obvious danger.

If the plaintiff would not have been injured, notwithstanding his negligence, but for the negligence of the operator in lowering the boom too far, thereby causing the hook to strike the top of the car and drop the chain, there could still be no recovery, as the operator of the boom was a fellow-servant of the plaintiff, and the risk of his negligence was assumed by the plaintiff. *Northern Pac. R. Co.* v. *Hambly,* 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; *Norfolk & W. R. Co.* v. *Nuckols,* 91 Va. 193, 21 S. E. 342.

Some question has been raised as to whether or not the superintendent of the Foundry Company in giving orders to Dalton and others as to the proper method of doing the work, was a vice-principal or a fellow-servant. The duty of giving suitable special orders necessary to the safety of the service is enumerated as one of the non-assignable duties of the master. Huffcut Agency, sec. 276. Any servant to whom that duty is delegated is, while engaged in its performance, a vice-principal. *Northern Pac. R. Co.* v. *Herbert,* 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; *Norfolk & W. R. Co.* v. *Houchins,* 95 Va. 398, 28 S. E. 578, 46 L. R. A. 359, 64 Am. St. Rep. 791.

Several cases decided by this court have been cited by counsel for the defendant in error in support of the propo-

62

sition that "the question whether the servant should have been warned has always been for the jury on the evidence." *Pocahontas Collieries Co.* v. *Williams,* 105 Va. 708, 54 S. E. 868; *C. & O. Ry. Co.* v. *Meadows,* 119 Va. 33, 89 S. E. 244; *Smith* v. *N. & P. Traction Co.,* 109 Va. 453, 63 S. E. 1005; *N. & W. Ry. Co.* v. *Cheatwood,* 103 Va. 365, 49 S. E. 489. An examination of these cases will show that none of them were cases of open and obvious dangers of which the servant knew, or in the exercise of ordinary care ought to have known. In the case at bar not only was the danger open and obvious, but the servant admits that he knew that the hook would bound out if it struck the car when hung up in a given way, and it was his duty to hang it up. Where the alleged cause of danger is so open and obvious, and the opportunity or knowledge on the part of the employee is so complete as to leave no doubt that he knew, or should have known all about it, the question is one of law for the court. *Clinchfield Coal Corp.* v. *Cruise,* 117 Va. 645, 86 S. E. 135. But whether the question be one for the court or the jury, in no view of the case could the jury have properly found a verdict for the plaintiff.

For these reasons the judgment of the trial court must be reversed, and this court proceeding to enter such judgment as the trial court should have entered, it is ordered that the demurrer to the evidence of the plaintiff in error be sustained, and that the action of the defendant in error be dismissed, with costs to the plaintiff in error.

*Reversed.*