E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.    49

Syllabus.

# Wytheville.

## E. I. DuPont de Nemours and Company v. William B. Hipp.

### June 13, 1918.

#### Absent, Burks, J.

1. Master and Servant—*Assumption of Risk—Knowledge of Servant.*—An employee who knows of the unsafe condition of the place in which he is working, or who by the exercise of ordinary care might know the same, is not compelled to continue his work, but if he does so continue it in such place, under such conditions, he assumes such risks as are ordinarily incident to the service in which he is engaged, and also such risks as become known to him during the progress of the work, or which might have been ascertained by him in the exercise of ordinary care.

2. Master and Servant—*Duty of Master to Warn Servant—Visible Dangers—Safe Place to Work.*—The master is not under an obligation to warn an adult servant of sound mind of the existence of dangers that are visible to men of ordinary intelligence, and has the right to assume, in the absence of evidence to the contrary, that his servant has ordinary intelligence and capacity, and is possessed with the instinct of self-preservation; and the general rule that the master must exercise ordinary care to provide his servant with a place reasonably safe in which to work does not apply to a place which is constantly changing by reason of the work then being done, nor does it apply where the very work which the servant is employed to do consists in making a dangerous place safe.

3. Master and Servant—*Safe Place to Work—Appliances Prepared by Servant Himself—Case at Bar.*—In the instant case the scaffold upon which the plaintiff, a carpenter, was working was devised by him, was under his control, and was in itself a place of extreme danger, and the rule requiring the master to provide a reasonably safe place in which the servant

7

is to work can have little application to such a situation, unless the master has himself constructed the place and directed the servant to use it. It differs from the permanent place required to be furnished in a mill or a factory, or where the place, the machinery, or other appliances with which the servant is employed to work are furnished by the master. When the place at which the work is to be done, or the temporary appliances for doing the same, are prepared by the servant himself, a different rule applies, and the duty of the master is performed when he supplies his servant with the proper materials with which to construct such appliances.

4.  Master and Servant—*Safe Place to Work—Appliances Prepared by Servant Himself—Case at Bar.*—In the instant case it was a part of the plaintiff's, a carpenter's duty, for his own protection, to keep the scaffold safe as well as to make it so. He must be held to the knowledge that, with other workmen there and suspended as it was, the danger of a fall might at any time become imminent. Every such service has its peculiar hazards, and this particular service, that is, the moving of this swinging scaffold, had in it, elements of extreme peril to the plaintiff, which at all times demanded extreme caution, prudence and foresight on his own part to avoid just such an accident as occurred.

5.  Master and Servant—*Injury to Servant—Moving Scaffold—Assumption of Risk—Case at Bar.*—Plaintiff, an experienced carpenter, was engaged in roofing, fastening metal sheets on a roof from the under side, standing on a scaffold or platform. The scaffold rested on two steel rods. These rods had been freshly painted, and plaintiff was injured by a fall occasioned by one end of the scaffold slipping from the rod which supported it, when he was preparing to move the same. Plaintiff had been directed by his foreman to work upon the scaffold notwithstanding that the paint was wet.

    *Held:* That the master was not liable.

6.  Master and Servant—*Injury to Servant—Moving Scaffold—Assumption of Risk—Case at Bar.*—The accident, if caused by the wet paint, was most unusual, and proper care does not require the anticipation of unusual events or make an employer an insurer against all accidents. To make the employer responsible there must be negligence, and negligence is the doing or failing to do some act which a person of ordinary prudence could forsee would naturally and probably cause the injury complained of. If on the one hand it is assumed, as in fairness it must be, that the plaintiff, with his knowledge and experience, did not realize that the risk was

E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.    **51**

Opinion.

increased by the fresh paint, it must also be assumed that the defendant did not realize such increased danger, if any. If, on the other hand, the view is taken which was urged for the plaintiff, that the defendant must be charged with knowledge of such increased risk, then it must also be concluded that the plaintiff also knew of it, and in that event it follows inevitably that he assumed that risk.

7. Master and Servant—*Assumption of Risk—Instructions.*—In an action by a servant against his master for injuries sustained by the servant in the course of his employment, it is reversible error, where the defense was the assumption of risk by the servant, for the trial court, upon the request of defendant, to refuse instructions on the assumption of risk.

8. Master and Servant—*Assumption of Risk—Instructions.*—In an action by a servant against his master for injuries sustained by the servant in the course of his employment, it is reversible error, where the defense was the assumption of risk by the servant, for the trial court to give a series of instructions directing a verdict for the plaintiff, if defendant was guilty of negligence, where each of the instructions entirely ignored the defense of assumption of risk.

Error to a judgment of the Circuit Court of Prince George county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Plummer & Bohannan,* for the plaintiff in error.

*Lassiter & Drewry,* for the defendant in error.

Prentis, J., delivered the opinion of the court.

William B. Hipp was seriously injured by a fall from a scaffold while working on a building which was being constructed by the E. I. DuPont de Nemours and Company at its plant in Prince George county, and brought this action alleging that his injury was due to the negligence of the

52 E. I. DuPont, etc. Co. v. Hipp, 123 Va. 49.

Opinion.

company. There have been two trials. Upon the first there was a verdict for the plaintiff, which the trial court set aside; upon the second there was another verdict for the plaintiff, upon which the trial court entered judgment. The defendant is here alleging several errors on the second trial.

The material facts, giving the plaintiff the benefit of the most favorable interpretation of the evidence, and omitting all reference to the conflicting evidence introduced by the defendant, may be thus stated. The plaintiff was a man about thirty-five years of age, a master carpenter of some fourteen years experience, something of an athlete, and regarded as a skilful and valuable man. He had been working at the plant for about eleven months before the accident. During that period he had worked on six buildings of the same kind as that on which he was working at the time of his injury, and he had done work similar to that which he was performing at the time of the accident on the roofs of three of such buildings. The house upon which he was then at work was known as "Purification Building No. 6," a large steel frame building, ninety feet high to the comb of the roof. The plans provided for a shed roof with a comparatively gentle slope on the sides, while in the center it was to be covered with an "A" roof, higher than the shed roof and of much steeper slope. The work assigned to him was the fastening of the metal sheets on this "A" roof from the under side, while on a scaffold or platform, and it was done thus: Two men on the top of the building placed the metal sheets of roofing in position and thrust pieces of soft wire through them, and it was the duty of the plaintiff and his fellow laborer on the scaffold to twist the wires in such a way as to fasten these sheets to the metal framework of the building. The scaffold, which was built, not by the company, but by Hipp and his fellow laborer, consisted of a top timber 2 x 4 inches, 10 or 12 feet long, resting on two

E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.     53

Opinion.

steel rods five-eighths of an inch in diameter which were about eight feet apart, which rods connected and held the two top purlins, and a bottom timber 4 x 6 inches, about 16 feet long, was swung therefrom and held by two loops of spliced rope. The bottom timber was supported at three points, namely, by the two loops of rope and by one of the girders running at right angles with the timbers; and there were two boards, each 9 or 10 feet long, which rested on the bottom timber of the scaffold and extended at right angles therewith to the side plates of the building. These boards were used by Hipp and his associate to pass from under the apex to the base of the "A" part of the roof so as to fasten the wires in their proper places. It is admitted that the scaffold was properly constructed, both as to materials and workmanship, and that it had been used with safety in other buildings as well as in that building up to the time of the accident.

On November 29, 1915, while Hipp and his associate were thus at work, they were directed to leave that particular place so that the painters could paint there. This painting was finished on the next morning, and immediately after the midday meal Hipp was directed by his foreman, Stillwell, to go back on the scaffold and continue the work which had been suspended on the previous day. Hipp made some objection to returning to work at that place while the paint was still wet; he did not, however, suggest that this constituted any source of danger, but only that it was cold and that he did not want to go on the scaffold and get the paint on him. He was told by the foreman that it was necessary to do so because his superior officer was "rushing the job." Raymond Winner then went with Hipp to work on the scaffold. They had put on several pieces of roofing and finished all that part of the roof immediately above the scaffold. It then became necessary, in order to continue their work, to move the scaffold to a new location by slipping it about

eight feet horizontially along under the apex of the roof to the next uncovered portion thereof, and again to suspend it from other similar steel rods about eight feet apart. Hipp had frequently done this, and his method of doing it was first to remove the boards which extended from the bottom timber of the scaffold to the side plates of the building, and then to fasten a long rope around one end of the upper timber and, with the assistance of the men on top of the roof, to slip the scaffold to its new location while one of the men below held the other end of the rope to prevent it from falling, this rope being passed from the end of the upper timber of the scaffold over a portion of the upper structural steel work of the building and down to the man below who stood on one of the girders. Proceeding with this, Hipp directed Winner to go after the rope which was beyond the next girder. Winner obeyed and at the same time Hipp started to walk towards the far end of the scaffold so as to catch the rope when it should be thrown to him by Winner, intending then to pass it around the far end of the upper timber in the usual way. At this time and before Hipp had reached the other end of the scaffold, the upper timber began to slip towards him and finding that he could not get to a place of safety in time, and that the end of the upper timber was about to slip off of one of the iron rods, Hipp having on gloves reached for and grasped the rod. The upper timber slipped off at that end, and as he was unable to hold his grasp he fell. While falling he threw himself into a steel tank about forty-five feet below, thus saving himself from a fall to the bottom floor ninety feet below.

The sole negligence relied upon is that he was directed by his foreman to return to his work while the paint upon the steel rods upon which the upper timber rested was fresh and wet. One of the several defenses relied upon was that the plaintiff could not recover because he had assumed the risk of such an accident.

E. I. DuPont, etc. Co. v. Hipp, 123 Va. 49.      55

Opinion.

This principle has been much discussed and many authorities are cited in the briefs. The doctrine which appears to be perfectly well settled, has been fairly stated in this language: An employee who knows of the unsafe condition of the place in which he is working, or who by the exercise of ordinary care might know the same, is not compelled to continue his work, but if he does so continue it in such place, under such conditions, he assumes such risks as are ordinarily incident to the service in which he is engaged, and also such risks as become known to him during the progress of the work, or which might have been ascertained by him in the exercise of ordinary care. *Virginia Portland Cement Co.* v. *Luck*, 103 Va. 432, 49 S. E. 577; *Reid* v. *Medley*, 118 Va. 462, 87 S. E. 616; *Riddley* v. *Clinchfield Coal Corp.*, 119 Va. 739, 89 S. E. 926; *Lynchburg Foundry Co.* v. *Dalton*, 121 Va. 480, 93 S. E. 587; *Jacobs* v. *Southern Ry. Co.*, 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970.

The master is not under an obligation to warn an adult servant of sound mind of the existence of dangers that are visible to men of ordinary intelligence, and has the right to assume, in the absence of evidence to the contrary, that his servant has ordinary intelligence and capacity, and is possessed with the instinct of self-preservation; and the general rule that the master must exercise ordinary care to provide his servant with a place reasonably safe in which to work does not apply to a place which is constantly changing by reason of the work then being done, nor does it apply where the very work which the servant is employed to do consists in making a dangerous place safe. *Jacoby Co.* v. *Williams*, 110 Va. 55, 65 S. E. 491; *Clinchfield Coal Corp.* v. *Cruise*, 117 Va. 645, 86 S. E. 135.

The scaffold upon which this plaintiff was working was devised by him, was under his control, and was in itself a place of extreme danger, and the rule requiring the master to provide a reasonably safe place in which the

56    E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.

Opinion.

servant is to work can have little application to such a situation, unless the master has himself constructed the place and directed the servant to use it. It differs from the permanent place required to be furnished in a mill or a factory, or where the place, the machinery, or other appliances with which the servant is employed to work are furnished by the master. When the place at which the work is to be done or the temporary appliances for doing the same are prepared by the servant himself, a different rule applies, and the duty of the master is performed when he supplies his servant with the proper materials with which to construct such appliances.

In 2 Labatt on Master and Servant, section 614, it is said: "If the master supplies suitable material for the construction of an appliance which he is not obliged, and has not undertaken, to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they used the materials thus supplied." Notes 54 L. R. A. 143.

The master cannot be held liable, under the rule requiring him to furnish a safe place for the servant, when the very work which the servant is doing consists in making safe the place which he alleges to have been in an unsafe condition. *Bedford Belt R. Co.* v. *Brown,* 142 Ind. 659, 42 N. E. 359.

"The rule does not apply to a case where several persons are employed to do certain work, and by the contract of employment either express or implied, the employees are to adjust the appliances by which the work is to be done." *Callan* v. *Bull,* 113 Cal. 593, 45 Pac. 1017.

The assumed risk doctrine has been applied in many cases, so as to exonerate the master from liability for injury to a servant from defects in temporary scaffolds or stagings constructed by a fellow servant in the progress of the general work in which they were engaged, and as a

E. I. DuPont, etc. Co. v. Hipp, 123 Va. 49.    57

Opinion.

means in the accomplishment of that work. Note 3 L. R. A. (N. S.) 501; Shearman and Redfield on Neg. (6th ed.), section 195; 26 Cyc. 1115.

"The obligation of an employer to furnish his employees with safe appliances and a safe place of work does not impose upon him the duty of supplying instrumentalities in a completed form. Where, under the terms of the contract of employment, the employees are required to construct an instrumentality, the employer's duty is discharged by furnishing suitable materials with which it may be constructed; and he is not liable for an injury due to a defect in its construction or adjustment. This frequently has been held in the case of scaffolds, staging, derricks, and like instrumentalities." 18 R. C. L. 596, citing many authorities. 26 Cyc. 1115.

One general rule is thus stated in *Studebaker* v. *Shelby Steel Tube Co.*, 18 Ann. Cas. 613: "Where an employer does not himself undertake the duty of furnishing the staging as a structure, but merely supplies suitable materials and competent labor by which it may be built and from time to time adapted to the work, and the duty of furnishing or adapting the staging as an appliance for use is intrusted to or assumed by the workmen themselves, within the scope of their employment, the employer is not answerable to one of the workmen for the negligence of a fellow workman in the construction of the scaffolding whereby it falls and injures him."

It was a part of the plaintiff's duty, for his own protection, to keep the scaffold safe as well as to make it so. He must be held to the knowledge that, with other workmen there and suspended as it was, the danger of a fall might at any time become imminent. Every such service has its peculiar hazards, and this particular service, that is, the moving of this swinging scaffold, had in it elements of

extreme peril to the plaintiff, which at all times demanded extreme caution, prudence and foresight on his own part to avoid just such an accident as occurred. *Leishman* v. *Union Iron Works,* 3 L. R. A. (N. S.) 500.

The court gave the jury twenty instructions. One of them referred to the assumption of risk doctrine, but did not clearly instruct the jury that if the evidence showed that the plaintiff assumed the risk he could not recover, although the defendant offered three instructions covering this phase of the case. These instructions, Nos. 7, 12 and 13, are as follows:

"7. The court instructs the jury that an employee who knows the unsafe conditions of a place in. which he is working, or who by the exercise of ordinary care might know the same, is not compelled to continue his work, but if he does go on with his work in such place under such conditions, he assumes such risks as are ordinarily incident to the service in which he is engaged, and also such risks as become known to him during the progress of the work, or which might have been ascertained by him by the exercise of ordinary care."

"12. The court instructs the jury that if they believe from the evidence that the plaintiff had been working on that part of the building where the injury occurred, that in the meanwhile the interior framework of the building had been freshly painted, and that the rods on which the scaffold is alleged to have rested were slippery from the paint, that he knew, or that he was charged with the knowledge, of the danger of using such scaffold under such conditions, and that while the plaintiff was working on the scaffold, or while he was preparing to move the same, the scaffold slipped on the rods and fell or caused the plaintiff to fall, then under such circumstances, if the jury believe that as a result of the painting of such rods the plaintiff was in-

E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.    59

Opinion.

jured, the defendant is not liable and the plaintiff cannot recover in this action."

"13. The court instructs the jury that the defendant is not liable for the injury he sustained, if the injury was due to a risk of which the plaintiff knew, or, by the exercise of ordinary care, might have known; therefore, if the jury believe from the evidence that the plaintiff knew, or, by the exercise of ordinary care, might have known, that the rods on which the top timber of the scaffold on which he was working rested were freshly painted and made slippery by the fresh paint, he assumed the risk of the top timber slipping off the rods, and he cannot recover."

While these instructions doubtless unnecessarily repeat the rule invoked, the defendant was entitled to have the jury substantially thus instructed, and the refusal of the court to do so constitutes reversible error.

In addition to this, the court gave the jury instructions Nos. 3, 4, 5 and 7, as follows:

"3. That the degree of care required of the plaintiff to entitle him to recover is such as should be reasonably expected from an ordinarily prudent person in his situation, that is to say, reasonable care. If he exercised such degree of care, he is entitled to recover damages for any injuries sustained, if the proximate cause thereof was the defendant's negligence as alleged in the declaration not in excess of the sum of twenty thousand dollars ($20,000)."

"4. That if they believe from the evidence that the plaintiff has proven the allegations of any one or more counts of the declaration herein by a preponderance of the evidence and that the plaintiff suffered and sustained injuries in the mode and manner charged in one or more counts of the declaration herein, and that he was in the exercise of ordinary care for his own safety, then they should find for the plaintiff and assess his damages in any sum they may

think proper not in excess of twenty thousand dollars ($20,000)."

"5. The court charges you that on a structure of this kind, the master is required by law to exercise reasonable care and supervision to see that ordinary risks and perils of employment are not unreasonably increased by any omissions or acts on its part to provide for the safety of its employees; and, if you find that this scaffold, ordinarily, was reasonably safe for the work required, and that the defendant, through its agents and servants, changed the conditions of safety surrounding this scaffold, and that the risk was unreasonably enhanced by slippery paint on the rods of which defendant knew or ought to have known, and that the plaintiff was ordered by the defendant's foreman to work on this scaffold, under these conditions, and the plaintiff exercising due care, was injured without negligence on his part, and the slippery condition of the rods aforesaid was the proximate cause of the injury, then the defendant has failed in its duty to provide a reasonably safe place to work, and it is your duty to find for the plaintiff unless you believe the danger was so apparently great that the plaintiff knew or ought to have known of it and kept off the scaffold."

"7. If the jury believe from the evidence that Hipp was ordered by his foreman to work upon the scaffold, and that he knew that there was danger in doing the work assigned him in the particular way in which he was ordered to do it, yet if the danger was not so imminent that a reasonably prudent man would not have attempted it under the direction of his foreman, and the said Hipp used such reasonable care as an ordinarily prudent man would have exercised, and was injured, then the defendant, E. I. duPont de Nemours and Company, is liable, and you should find for the plaintiff and assess his damages at a sum not to exceed twenty thousand dollars ($20,000), provided negligence of the defendant was the proximate cause of the injury."

E. I. DuPont, etc. Co. *v.* Hipp, 123 Va. 49.    61

Opinion.

In each of these instructions the defense of assumption of risk was entirely ignored, and yet each of them directed a verdict for the plaintiff. That this is prejudicial error is well settled by many cases in Virginia. *C. & O. Ry. Co.* v. *Saunders*, 116 Va. 826, 83 S. E. 374; *Va. & S. W. Ry. Co.* v. *Skinner*, 117 Va. 851, 86 S. E. 131; *Atlantic Coast Line R. Co.* v. *Newton*, 118 Va. 222, 87 S. E. 618.

There was no secret or unknown fact; all that the defendant knew the plaintiff also knew. The accident, if caused by the wet paint, was most unusual, and proper care does not require the anticipation of unusual events or make an employer an insurer against all accidents. To make the employer responsible there must be negligence, and negligence is the doing or failing to do some act which a person of ordinary prudence could foresee would naturally and probably cause the injury complained of. If on the one hand we assume, as in fairness we must, that the plaintiff, with his knowledge and experience, did not realize that the risk was increased by the fresh paint, we must also assume that the defendant did not realize such increased danger, if any. If, on the other hand, we take the view which is urged for the plaintiff and hold that the defendant must be charged with knowledge of such increased risk, then we must also conclude that the plaintiff also knew of it, and in that event it follows inevitably that he assumed that risk.

The assumed risk doctrine is based upon right reason, and is supported by impregnable authority, but because of the increased dangers to which modern progress has subjected industrial workers, the humane principle embodied in workmen's compensation laws should doubtless displace it. This relief, however, can only come from the legislature, and this has been recognized in Virginia by the recent act on the subject.

The record is voluminous. Several other errors are assigned, and many other questions are argued. We, however, do not think that any good purpose would be served by prolonging this discussion. For the errors indicated, the verdict must be set aside, the judgment reversed, and the case remanded for a new trial, if the plaintiff shall be so advised.

*Reversed.*