## Wytheville.

## LYNCHBURG TRACTION AND LIGHT COMPANY V. GORDON.

### June 13, 1918.

### Absent, Burks, J.

1. APPEAL AND ERROR—*Conflicting Evidence—Affirmance.*—In the instant case, upon the vital questions of fact, the evidence was irreconcilably conflicting. The conflict arose, however, from two opposing versions of possible facts under which the accident occurred. Either version might have been true, and the selection of the more credible one was exclusively within the province of the jury. No physical laws or facts prevent the acceptance of the testimony upon which the plaintiff sought and obtained the verdict, and the Supreme Court of Appeals could not, therefore, apply to the case, as defendant earnestly insisted it should, the rule of evidence applicable in cases where the court must either disregard the testimony, or accept the impossible as true.

2. MASTER AND SERVANT—*Electricity—Injury to Lineman—Fellow Servants—Reliance on Vice-Principal's Statement.*—Where the testimony of an assistant foreman himself left no doubt that he was a vice-principal, and that it was his duty to decide whether the electric current should be cut off, and, therefore, primarily his duty to know whether it was on or off at a given time and place, the plaintiff, a lineman, had the right to rely upon the assistant foreman's statement that the current was cut off when the foreman ordered him to cut a wire which, when connected with the power plant, carried a dangerously heavy electric current, and the question as to whether rubber gloves or other instrumentalities for use in cutting live wires were available to plaintiff and should have been used by him, is immaterial.

3. MASTER AND SERVANT—*Electricity—Injury to Lineman—Fellow Servants—Reliance on Vice-Principal's Statement—Burden of Proof.*—Where an assistant foreman, whose testimony showed him to have been a vice-principal, ordered the plaintiff, a lineman, to cut a wire, assuring him that there was no current

upon the wire, and the plaintiff, relying upon this assurance, took hold of the wire with his naked hands and was injured, plaintiff might recover against his master.  But the burden of proving the above facts to the satisfaction of the jury was upon the plaintiff.

4.  MASTER AND SERVANT—*Electricity.*—If a servant, an experienced lineman, working about highly charged wires of the defendant daily and knowing how to handle them, was ordered by his foreman to kill a wire, without any assurance whether the current was on or off, he could not recover where he took hold of the wire with his naked hand and was injured.

5.  MASTER AND SERVANT—*Vice-Principal—Electricity—Assumption of Risk.*—If an assistant foreman, in the discharge of a non-assignable duty, assured the plaintiff, a lineman, that a wire was dead, there was nothing upon which the doctrine of assumed risk or shifting conditions could rest.

6.  VARIANCE—*Appeal and Error—Question Raised for First Time on Appeal.*—An objection that the trial court erred in permitting the plaintiff to recover upon a different case from that made by his declaration, cannot be made for the first time on appeal, as it involved the ordinary question of a variance between the declaration and the proof.

Error to a judgment of the Corporation Court of city of Lynchburg, in an action of trespass on the case.  Judgment for plaintiff.  Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie,* for the plaintiff in error.

*Volney E. Howard* and *H. C. Featherston,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

We will designate the parties here according to their position in the court below.  The plaintiff, H. N. Gordon, while in the employment of the defendant, the Lynchburg Traction and Light Company, was severely injured by contact with

a heavily charged electric light wire, and brought this action alleging that his injuries were caused by the defendant's negligence. There was a verdict and judgment in his favor.

Upon the vital questions of fact, the evidence is irreconcilably conflicting. This conflict arises, however, from two opposing versions of possible facts under which the accident occurred. Either version might have been true, and the selection of the more credible one was exclusively within the province of the jury. No physical laws or facts prevent the acceptance of the testimony upon which the plaintiff sought and obtained the verdict, and we cannot, therefore, apply to the case, as defendant earnestly insists we should, the rule of evidence applicable in cases where the court must either disregard the testimony, or accept the impossible as true. As Judge Keith said, in *Atlantic Coast Line R. Co.* v. *Newton,* 118 Va. 222, 231, 87 S. E. 618, 622: "We find here no ground for applying the doctrine that courts cannot accept as true what in the nature of things could not have occurred in the manner and under the circumstances narrated and may, therefore, be said to be incapable of proof. * * *. We have here the ordinary case of a conflict of testimony, which it was the province of the jury to solve."

Dealing with the case, therefore, as we must, upon the evidence which materially tended to support the plaintiff's theory, and disregarding the evidence in conflict therewith, we find the following pertinent facts:

The defendant maintained and operated in the city of Lynchburg an electric light and power plant. The plaintiff was a lineman and had been employed as such by the defendant for about eight months. On the morning of the accident, he was engaged with other linemen in the work of changing the electric light lines from one side of Park avenue over to the other side. These men were not at that time engaged in the work of inspection and repair, but were

constructing a new line which they had about completed on the side of Park avenue opposite to the old line, and the plaintiff was injured while in the act of cutting the old wires preparatory to making a new connection on the other side of the street. The gang of men to which the plaintiff belonged was employed by and subject to the general supervision and control of a chief foreman named Fisher. An assistant foreman, A. J. James, was in immediate charge of the gang, and, in the absence of Fisher acted also in his stead. James was present and Fisher was absent at the time of the accident. The plaintiff was temporarily detained at the defendant's office that morning in connection with some other work he had been doing the day before, and did not go out with the other members of his gang, but arrived after they had been at work about an hour. Upon his arrival, he assisted in digging a post hole and setting a post, and was then ordered by James to get his tools, go up the pole to which the old line was attached, and cut a wire which, when connected with the power plant, carried a dangerously heavy electric current. The plaintiff's statement as to what then occurred, corroborated by a substantially similar statement of his brother, C. D. Gordon, appears from the following question and answer:

"After he told you that, what did you do, did you go up the pole?

"Yes, sir, I went up and he told me to cut this wire, this pole pin wire, and hold it, cut and hold it and throw it back over the span wire that holds up the trolley and I asked him, 'Is this wire dead?' and he said, 'Yes.' Of course, I did not grab hold of it then and I asked him over again and he said, 'Yes, cut it and hold it and throw it over the span wire to keep it from hitting the span wire and flying over on the trolley,' and I cut it and after I reach out and cut it that is the last thing I remember."

The foreman, James, denies this statement, insists that

as he knew the wire was alive, he certainly would not have said, and did not say, that it was dead; and claims that he told the plaintiff the wires "were working,", and he must "kill them" and be careful. In this James is corroborated by the testimony of all the other members of the gang except the plaintiff and C. D. Gordon. The jury, however, accepted the plaintiff's version. ·

It appears from plaintiff's evidence that there was a "tap" about 600 feet back of the point of the accident, and that the wire which the plaintiff was ordered to cut was connected with the main line and received its current through this tap. The defendant did not observe any regular or uniform rule or custom in that regard, but according to plaintiff's evidence it was not unusual when such wires were to be cut, especially when permanent changes in the line were being made, to cut the current off at the tap. This of course rendered the operation of cutting the wire entirely safe. There were also means of avoiding the danger when the current was on, such as the use of rubber gloves or the employment of a device known as a "come-along." Whether the current should be cut off at the tap in any case, was a question which the defendant left to the judgment of the foreman. The testimony of James himself seems to us to leave no room to doubt that in this particular he, in the absence of Fisher, was the *alter ego* of the defendant, and that it was his duty to decide whether the current should be cut off, and, therefore, primarily his duty to know whether it was on or off at a given time and place. In this respect he was a vice-principal, and the plaintiff had the right to rely upon his statement that the current was off. This being true, the question discussed to some extent. before us as to whether rubber gloves or other instrumentalities for use in cutting live wires were available to plaintiff and should have been used by him, is immaterial. The wire would have been harmless and the plaintiff could with

perfect safety have done exactly what he did do if the foreman's alleged statement had been true.

Taking the view of the case above indicated, the learned judge of the trial court instructed the jury as follows:

1. "The court instructs the jury that if they believe from the evidence that James ordered the plaintiff to ascend the pole near the intersection of Euclid and Park avenues, and cut the primary wire, that at the time the said James assured the plaintiff that there was no current upon said wire, and the plaintiff, relying upon said assurance, took hold of the said wire with his naked hands, and was injured, then they must find for the plaintiff, but the burden of proving the above facts to the satisfaction of the jury is upon the plaintiff."

2. "The court instructs the jury that if they believe from the evidence that the plaintiff was an experienced lineman, working about highly charged wires of the defendant daily and knew how to handle same, and that the foreman James, on the occasion of the injury, instructed him to go up the pole, and kill the wire, without any assurance about the current, then they must find for the defendant."

These instructions, we think, were correct; and the verdict of the jury in favor of the plaintiff's theory is the end of the case.

It is urged that the court erred in giving the foregoing instructions to the exclusion of the defendant's theory that the plaintiff assumed the risk, and its further theory that the injury resulted from the shifting conditions arising in the progress of the work. We are of opinion, however, that the instructions given by the court necessarily covered the entire case and gave the defendant the benefit of every proper defense. If the foreman, in the discharge of a non-assignable duty, assured the plaintiff that the wire was "dead," there was nothing upon which the doctrine of assumed risk or shifting conditions could rest. If he did not

give such assurance, then under instruction number two the jury were obliged to find for the defendant.

It is also insisted that the trial court erred in permitting the plaintiff to recover upon a different case from that made by his declaration, the contention being that the declaration relied solely upon an alleged previous custom of disconnecting the current, while the plaintiff's evidence attempted to develop a case of liability on the ground of a specific assurance and order given by a vice-principal. This point, which does not appear to have been made in the lower court, involves the ordinary question of a variance between the declaration and the proof. We need not stop here to inquire whether there was such a variance as to have constituted a valid objection to the evidence when offered. The objection cannot be raised for the first time in this court. *Va. & S. W. R. Co.* v. *Bailey,* 103 Va. 205, 228, 49 S. E. 33.

We find no error in the record, and the judgment must be affirmed.

*Affirmed.*