Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### E. I. Dupont de Nemours and Company v. Brown.

January 20, 1921.

1. MASTER AND SERVANT.—*Assumption of Risk—Place of Work—Instructions.*—In an action by a servant for injuries, defendant asked an instruction that if the jury believed that a person of ordinary prudence would have realized the risks and dangers of working around the place where plaintiff was injured, "then the plaintiff himself must be held to be chargeable with knowledge of the conditions which caused the injury and of the risks incident thereto." In the instructions for the defendant taken as a whole, the court had clearly presented defendant's view that plaintiff had assumed the risk of injury.
   *Held:* That there was no error in the action of the court in amending the instruction offered by striking out after the word "knowledge," the words "of the conditions which caused the injury and of the risks incident thereto," and substituting the word "thereof."

2. MASTER AND SERVANT.—*Assumption of Risk—Instructions.*—In the instant case the defendant insisted during the trial that the plaintiff could not recover because he had assumed the risk of the danger surrounding his place of work.
   *Held:* That where the court clearly presented defendant's view in its instructions to the jury, its action in refusing to take the question from the jury was proper.

3. MASTER AND SERVANT.—*Safe Place of Work—Instructions.*—An instruction embraced the proposition that the duty of the master extended "to every portion of the place in which the master's business is conducted, from which danger is reasonably likely to result in the servant's injury, unless ordinary care is used for his reasonable safety." The defense, while conceding that the instruction in question might not be improper if the place of injury were a permanent place of work, contended that it was in the instant case misleading as requiring defendant to keep every spot in its plant reasonably safe.
   *Held:* That the instruction, fairly construed, related only to those

parts of the plant in which the plaintiff was ordered to work, and did not extend to places manifestly dangerous.

4. MASTER AND SERVANT.—*Safe Place to Work—Case at Bar.*—In the instant case, the place where plaintiff, a workman in defendant's powder plant, was injured was a narrow strip of ground between a nitre cake basin and the railroad car, at which plaintiff was engaged in loading heavy iron wheels.

*Held:* That it was the duty of the defendant to keep such a place within its plant reasonably safe for its employees while working there in obedience to proper orders.

5. MASTER AND SERVANT.—*Injury While Obeying Orders—Instructions.*—In an action by a servant against his master for injuries, an instruction to the effect that a servant is excusable for obeying the orders of those authorized by the master to direct him, and that mere knowledge of a danger is not alone sufficient to defeat a recovery unless that danger is so manifest that no reasonably prudent man would obey the order, is correct as an abstract proposition of law, and is pertinent in a case where defendant insisted that there could be no recovery because of the contributory negligence of plaintiff in obeying an order to work in a dangerous place.

6. MASTER AND SERVANT.—*Safe Place to Work—Contributory Negligence for Jury—Case at Bar.*—In the instant case, the place where plaintiff, a workman in defendant's powder plant, was injured was a narrow strip of ground between a nitre cake basin and the railroad car, at which plaintiff was engaged in loading heavy iron wheels. While so engaged he slipped, and was burned by the refuse liquid acid. The case was a very close one upon the question of plaintiff's contributory negligence. But the jury having found in favor of plaintiff, its verdict could not be disturbed, there being evidence tending to prove that the nitre cake basin, known to be dangerous, was within four feet of the track, but that the danger was not so manifest as to convict plaintiff of foolhardiness in obeying the order of the master.

7. APPEAL AND ERROR.—*Reversal—Code of 1919, Sec. 6363.*—Under Code of 1919, section 6363, the Supreme Court of Appeals can only reverse the judgment of the trial court if it appears that the judgment is plainly wrong or without evidence to support it.

Error to judgment of the Circuit Court of Prince George County in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Plummer & Bohannan* and *Bernard Mann,* for the plaintiff in error.

*R. H. Mann,* for the defendant in error.

Prentis, J., delivered the opinion of the court.

A. L. Brown, a laborer, while employed by the E. I. DuPont de Nemours and Company, was injured by having his feet and legs burned by the refuse liquid acid in the place designated in the record as the "nitre cake dump" or "salt cake bed" or "basin," in Plant A. A jury found a verdict in his favor upon which the court entered judgment, and of this the company is here complaining.

There are two assignments of error—one that the court erred in refusing to give certain instructions asked for by the company, as well as in giving over the company's objection certain instructions asked for by the plaintiff; and the other that the verdict is contrary to the law and the evidence.

[1, 2]    As to the instructions, it appears that the court gave twelve upon motion of the company, which fully cover every detail of the defenses relied on and are quite as favorable to the defendant as was proper; indeed they embody every proposition of law which is now urged upon this court as a reason for reversing the judgment. The only change made by the trial court in any of these twelve instructions was that made in the 10th. As offered, it read thus:

"The court instructs the jury that if they believe from the evidence that a person of ordinary prudence whose mental and physical powers and whose opportunities for observing the conditions by which he was surrounded and the facts indicative of danger were the same as those of the plaintiff would have realized the risks and dangers of work-

ing around the salt cake basin, then the plaintiff himself must be held to be chargeable with knowledge of the conditions which caused the injury and of the risks incident thereto.

"If you believe from the evidence that the plaintiff knew or that he should have known of the danger of working around the salt cake basin he must be held to have assumed the risk of woi king there and he cannot recover."

The court amended it by striking out, in the first paragraph, immediately following the word "knowledge," these words, "of the conditions which caused the injury and of the risks incident thereto," and substituted therefor the word "thereof," so as to make the latter part of that clause read, "then the plaintiff himself must be held to be chargeable with knowledge thereof."

As already stated, every defensive theory of the company which the evidence justified was concretely presented by the numerous instructions given for the defendant, read as a whole. The company insisted during the entire trial that the plaintiff should not recover because he had assumed the risk of such an injury, but the court properly refused to take this question from the jury. It, however, denied the company no right, but clearly presented in the instructions this view of the defendant. It is apparent that the jury did not so find, because they did not believe the evidence justified such a conclusion. No objection is perceived to the instruction No. 10 as amended.

The assumed risk doctrine was also fully covered by other instructions.

[3, 4] Instruction V, given upon motion of the plaintiff, reads thus: "The court instructs the jury that the care and diligence required of the master to provide and maintain a reasonably safe place in which his servant may perform his work is such as a reasonably prudent man would exercise under like circumstances to protect his ser-

vant from injury, having in view the character of the service required and the dangers, if any, to be apprehended by a reasonably prudent man in the exercise of ordinary intelligence and care and extends to every portion of the place in which the master's business is conducted from which danger is reasonably likely to result in the servant's injury, unless ordinary care is used for his reasonable safety. Such duty on the part of the master must be continuously fulfilled and positively performed; and if the master neglects this positive duty and the servant, without fault on his part, is injured as a proximate result of such neglect, the master is liable for damages, unless you further believe from the evidence that the plaintiff assumed the risks incident to his employment, as explained in another instruction in this case."

Exception is taken to this upon the ground that it is confusing with reference to the duty involved, and an effort is made to distinguish between the particular place at which this accident occurred (*i. e.*, a place in the plant of the company variously estimated by opposing witnesses at from four to eight feet wide, separating the railroad track and the nitre cake basin), and a permanent place of work, in a factory or shop. It is conceded in argument that it might not be improper to give such an instruction if the place of the injury were such a permanent place of work in a factory, or shop; and special emphasis is laid on the fact that the jury are told that the duty with reference to providing a safe place "extends to every portion of the place in which the master's business is conducted, from which danger is reasonably likely to result in the servant's injury." We do not think that there is any reason to suppose that the jury were misled by this instruction. The place referred to in the evidence is fully identified, and is the narrow strip of ground between the nitre cake basin and the railroad car, at which the plaintiff was engaged in loading the heavy

iron wheels. That it was the duty of the company to keep such a place within its plant reasonably safe for its employees while working there in obedience to proper orders is in our opinion clear, and we do not think that the jury could possibly have been misled into thinking that the instruction required the company to keep every spot in the plant reasonably safe for its workmen, because there were many places in it that were manifestly dangerous and in these we assume the employes were not required to work. Certainly, this instruction fairly construed relates only to those parts of the plant in which the plaintiff was ordered to work.

[5] Then, exception is taken to the giving of instruction VII at the instance of the plaintiff. This reads thus: "The court instructs the jury that a servant is, as a general rule, excusable for obeying orders, in or about his master's business, when such orders are given by the master or by one in authority over the servant, as the representative of the master, unless the danger to be incurred by such obedience is so plain and manifest that no prudent person would attempt obedience even under orders from one having authority over him, and although there be apparent danger in obeying the master's orders, yet such knowledge on the part of the servant will not of itself defeat a recovery, if the danger is not glaring, and such as threatens immediate injury."

It is conceded by the attorney for the company that this instruction may state a correct abstract principle of law, but it is claimed that in this case it is misleading, confusing and without support in the evidence. One of the objections is said to be that it assumes that the foreman of the two gangs of laborers were vice-principals. There are varying circumstances under which a foreman, in giving orders and directions as to the master's work, may be either a vice-principal or a fellow servant. It is not necessary

in this case to discuss these differing phases of the question, because this instruction was not intended to cover this phase of the case.   It was given in order to meet the defense that the plaintiff was himself guilty of contributory negligence in obeying the order, and hence that his action was barred.   It is fully sustained by the precedents in this State and elsewhere.

In *Clarke* v. *Portland Cement Co.*, 106 Va. 123, 55 S. E. 587, this identical instruction is approved, and this is pertinent from 4 Labatt on Master and Servant (2d ed.), sec. 1470, p. 4304: "But there is an overwhelming weight of authority to sustain the doctrine that the liability to which the master is declared to be subject wherever 'the negligent act is a direct result of the exercise of power conferred by the master, in the performance of a duty devolving by law upon him,' is predicable in the case of orders issued in respect to the work, whatever may be the precise object to which those orders may have relation.   It is, in fact, difficult to see what more indisputable example there can be of an 'exercise of authority' than the giving of such orders and for the purpose of affecting the master with liability in this instance, it is obviously quite immaterial whether the delinquent employee be a mere superior servant or a general or departmental manager.   According to the great majority of the cases, therefore, all that is necessary to fix liability upon a master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position." *Lane* v. *Bauserman*, 103 Va. 152, 48 S. E. 857, 106 Am. St. Rep. 872; *Ches. & O. Ry. Co.* v. *Meadows*, 119 Va. 57, 89 S. E. 244; *Millboro Lumber Co.* v. *Donald*, 120 Va. 155, 90 S. E. 618; *Lynchburg Foundry Co.* v. *Dalton*, 121 Va. 489, 93 S. E. 587; *Turner* v. *Richmond & R. R. R. Co.*, 121 Va. 200, 92 S. E. 841; *Lynchburg Tr. & L. Co.* v. *Gordon*, 123 Va. 198, 96 S. E. 195.

The instruction only states the general proposition that a servant is excusable for obeying the orders of those authorized by the master to direct him, and that mere knowledge of a danger is not alone sufficient to defeat a recovery unless that danger is so manifest that no reasonably prudent man would obey the order. It is certainly pertinent as bearing upon the insistence of the company that there could be no recovery in this case because of the contributory negligence of the plaintiff. Clearly, the objection is not well taken.

[6] Most of the elaborate brief is devoted to the other assignment of error—that is, that the verdict should have been set aside because contrary to the law and the evidence.

This nitre cake basin in Plant A was a lake or pond 300 by 600 yards in size, in which the liquid refuse of the acid which was used by the company in the manufacture of guncotton and powder was deposited. The crust of it, when the liquid cooled, became white "like snow or ice caked over," and its existence was well known, indeed obvious. At some places it was guarded by a wire fence, and at intervals around its margin were signs, on both sides of which were in red letters these words of warning: "Hot! Do not walk here." This liquid, even after the top had become encrusted, was dangerous, and the crust was not sufficiently strong to bear the weight of a man, so that one who stepped or fell into it would inevitably be burned and seriously injured. At the precise place at which the accident occurred there was no wire fence guarding the shore and the narrow gauge railroad track or tramway ran close thereto, the distance being variously estimated at from four to eight feet therefrom. The track ran through both Plants A and B, and was used for transporting materials and supplies. While the plaintiff usually worked at

Plant B, he also sometimes worked in Plant A. That he knew of the existence of the lake and of its dangerous character cannot be doubted, and this is relied upon as sufficient to defeat his recovery. On this occasion he was directed to assist in loading heavy iron wheels upon the rear of a flat car standing upon the track in Plant A, at the place indicated. He was ordered to go around on the side of the car next to the nitre cake basin in order to hold the wheels upright while other laborers were to push them up on the rear end of the car, the height of which was about two feet, while the wheels were about eighteen inches high. He in substance testifies that in order to get a purchase upon these heavy wheels, without knowing that the shore of the nitre cake basin was so close, and thinking himself safe, while thus engaged one of his feet slipped, and in attempting to recover his balance both feet went into the edge of the basin, and that thus his injury occured. He also claims, and there is evidence tending to support this claim, that the place was insufficiently lighted.

The case upon the facts is very close indeed, and there is evidence which would have justified the jury in reaching the conclusion that the plaintiff should not be allowed to recover because of his own inattention and lack of care. If the jury had so found, we would not have disturbed the verdict. They, however, upon a fair conflict in the evidence as to the lights, and with full knowledge of all the surrounding circumstances, have acquitted him of contributory negligence.

[7] In cases like this, we are controlled by the statute, Code 1919, sec. 6363, and can only reverse the judgment of the trial court if it appears that the judgment is plainly wrong or without evidence to support it. Much of the argument is devoted to the establishment of the proposition that this verdict is without support in the evidence. We cannot adopt this view, however. The plaintiff is not

to be adjudged guilty of contributory negligence if he has exercised reasonable care, such care as a reasonable man would exercise under similar circumstances, and if the question be one about which reasonable men may fairly differ, it must be solved by a jury, and this court is without power to revise their judgment as a matter of law. It is not surprising that the jury concluded that the place was not reasonably safe for the performance of the work to which the plaintiff was assigned.   There is evidence tending to prove that this nitre cake .basin, known to be dangerous, was within four feet of the track, but the danger was not so manifest and imminent as to convict him of foolhardiness in obeying the order; hence, it is a case in which the master instead of the servant assumed the risk of the situation.

The trial court committed no error of law in the conduct of the trial, and the verdict of the jury, upon the record presented, must be regarded as conclusive.

*Affirmed.*