# CIRCUIT COURT OF THE CITY OF NORFOLK

Stackhouse, Inc.,
and Danny Alonzo Bell

v.

Debra L. Boyce

## Case No. (Law) L95-732

BY JUDGE MARC JACOBSON

### July 10, 1997

The Defendant Debra L. Boyce has moved this Court to set aside the jury verdict rendered against her on the ground that the verdict is contrary to the law and evidence. Plaintiffs Stackhouse, Inc., and Danny Alonzo Bell claim in opposition to the motion to set aside the jury verdict that evidence supported the verdict and, therefore, the verdict should not be set aside. The facts presented at trial, taken in the light most favorable to the Plaintiffs, follow.

On August 30, 1991, Boyce, was driving south on Independence Boulevard, approaching the intersection of Baxter Road. Southbound Independence Boulevard consisted of four lanes at Baxter Road in the City of Virginia Beach: a left turn lane, two through-travel lanes, and a right turn lane. Bell was driving a truck owned by Stackhouse. The truck was pulling a trailer of telephone poles along Independence Boulevard. At the intersection of Baxter Road, Bell entered the right turn lane of Independence Boulevard and began to turn right onto Baxter Road. At this time, Boyce was traveling in

the right-hand through-travel lane. When the truck operated by Bell had almost completed its turn, one pole extending from the back of the trailer entered Boyce's lane of travel. The pole struck the post between the windshield and passenger-side window and impaled Boyce's car. The truck operated by Bell continued to make its turn and stopped on Baxter Road, carrying with it Boyce's impaled car suspended from the telephone pole.

Stephanie Pagano, a passenger in Boyce's car, sustained severe injuries from the accident. Pagano sued both of the Plaintiffs and Boyce, and the parties settled the suit. As part of the settlement, the parties signed a release that relieved the Plaintiffs and Boyce from any further liability to Pagano. Under Virginia law, Va. Code Ann. § 8.01-35.1(B) (Michie 1992), that release gave the Plaintiffs the right to seek contribution from Boyce, which they did.

The issue at trial was whether Boyce failed to keep a proper lookout and, if she did, whether that failure was a proximate cause of the accident. The Plaintiffs' case-in-chief consisted of two witnesses and a brief excerpt from Boyce's deposition. The Plaintiffs' first witness was William Bailey, who testified to these facts:

Bailey was driving a sport utility vehicle two cars behind the truck in the right turn lane and could see over a Cadillac traveling between him and the trailer of poles; (Trial Tr. Excerpt of William Bailey at 5, 13.) He could see the round face of the pole end; *id.* at 3. The truck was in the right turn lane and slowly began to make its turn; *id.* at 5, 7. As the truck turned, Bailey could see a decreasing angle of the pole face as that end of the pole began to move in a leftward direction; *id.* at 6. Boyce's white car passed him in the right through-travel lane; *id.* at 8. Bailey watched the end of the pole move leftward until Boyce's white car was between him and the end of the pole and he could no longer see the end of the pole; *id.* at 6. The car ran into the pole and the pole crashed through the windshield or A-post on the passenger side; *id.* at 9. The pole jerked the car sideways, speared the car, and carried the car through the turn. *Id.*

On cross-examination, Bailey further stated:

The traffic in the travel lanes was flowing, but the pole eventually entered the right lane and obstructed travel; *id.* at 14-15. Bailey watched the end of the pole until Boyce's white car came between his view and the end of the pole; *id.* at 17. Bailey never had a view of which lane the pole was in. *Id.* at 18.

The Plaintiffs' second witness was Cathy Batzel, who testified *via* video tape. She stated during her *de bene esse* deposition that:

Batzel was driving south on Independence Boulevard on the day of the accident; (De Bene Esse Dep. Tr. Katherine Batzel at 8.) Boyce stopped for a red light at the intersection of Bonney Road and Independence Boulevard, and Batzel stopped behind her; *id.* Boyce was the first car at the light and Batzel was directly behind her; *id.* While they were stopped at the red light, Batzel saw the Plaintiffs' truck with a long trailer carrying long poles make a left-hand turn from west-bound Bonney Road onto south-bound Independence Boulevard; *id.* at 9. When their light turned green, Boyce and Batzel preceded "quickly" south on Independence Boulevard; *id.* at 10. As she approached the intersection of Independence Boulevard and Baxter Road, Batzel saw the Plaintiffs' truck and trailer straddling the line dividing the right through-travel lane and the right turn lane as it turned onto Baxter Road; *id.* at 11. Batzel observed that the truck was long and knew "it was in our lane" to make the big turn; *id.* at 12. Boyce slowed and Batzel slowed because the truck was in their lane; *id.* at 12, 14. Boyce and Batzel continued forward because they had a green light and the Plaintiffs' truck continued to make its turn; *id.* at 14. Boyce went "a little bit to the left and [tried] to continue straight"; *id.* at 17. The pole from the truck "went through the front windshield and then it caused the car to whip around and go through … the rear windshield."*Id.* at 15.

On cross-examination, Batzel further stated:

Boyce was always completely within her lane of travel; *id.* at 28. As Batzel approached the intersection of Independence Boulevard and Baxter Road, the poles were parallel to her lane of traffic, the right through-travel lane; *id.* When the Plaintiffs' truck had almost completed the turn, the pole moved out into the right through-travel lane.*Id.* at 30.

The Plaintiffs then read into evidence four questions and answers from the transcript of Boyce's deposition:

Q: When were you first aware of the truck pulling the trailer with the poles on it?
A: When the pole came through my windshield.
Q: You never saw it before that time?
A: I was aware of traffic to my left and to my right, but I don't remember seeing the truck.
Q: Did you ever see the truck?
A: I'm sure it was there, but I don't remember … .
Q: So it's your best estimate that you approached the intersection at a speed of somewhere 30 to 40; is that correct?
A: Right.

(Dep. Tr. Deborah Boyce at 34, 36.)

At the close of the Plaintiffs' case, Boyce moved to strike the evidence. The Court reserved ruling on that motion and Boyce presented her case. Most of Boyce's evidence concerned the lack of safety precautions the Plaintiffs took in transporting the poles, including failing to have escort vehicles, multiple flags, and "Over Length Load" signs. Boyce also testified.

After all of the evidence was in, Boyce renewed her motion to strike the evidence and asked the Court to order a directed verdict. The Court withheld ruling on these motions and instructed the jury.

The Court included in its instructions to the jury the following instruction concerning a proper lookout:

> The duty to keep a proper lookout requires a driver to use ordinary care to look in all directions for vehicles or conditions that would affect her driving, to see what a reasonable person would have seen, and to react as a reasonable person would have acted to avoid a collision under the circumstances.

(Jury Instruction No. 11.) The jury returned a verdict for the Plaintiffs, thus finding Boyce was negligent and that her negligence was a proximate cause of the accident. (*See* Jury Instruction No. 12.) Boyce has filed a motion to set this verdict aside on the ground that it is contrary to the law and evidence.

The Court finds that the Plaintiffs presented sufficient credible evidence from which the jury could have reasonably concluded that Boyce failed to keep a proper lookout. The standard for setting aside a jury verdict in Virginia is high. Va. Code § 8.01-430 provides:

> When the verdict of a jury in a civil action is set aside by a trial court upon the ground that it is contrary to the evidence, or without evidence to support it, a new trial shall not be granted if there is sufficient evidence before the court to enable it to decide the case upon its merits, but such final judgment shall be entered as to the court shall seem right and proper.

Va. Code Ann. § 8.01-430 (Michie 1992). An appellate court can set aside a jury verdict on one of two grounds: either because the verdict is without evidence to support it or because the verdict is plainly wrong even if some evidence supports it. *See Du Pont de Nemours & Co. v. Brown*, 129 Va. 112, 105 S.E. 660 (1921). Code § 8.01-680 provides:

When a case, civil or criminal, is tried by a jury and a party objects to the judgment or action of the court in granting or refusing to grant a new trial on a motion to set aside the verdict of a jury on the ground that it is contrary to the evidence ... the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.

Va. Code Ann. § 8.01-682 (Michie 1992).

No statute specifies when a trial court should or should not grant a motion to set aside a jury verdict. In *Commonwealth v. McNeely*, 204 Va. 218, 129 S.E.2d 687 (1963), the court stated:

If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the judges disapproval.

*Id.* at 222, 129 S.E.2d at 689-90. When a jury resolves conflicting inferences that necessarily underlie the verdict that are reasonably deducible from the evidence, a trial judge should not set the verdict aside. *Lane v. Scott*, 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979). Therefore, if the Court finds any credible evidence supporting the jury's verdict, it should stand.

The Plaintiffs presented evidence from which the jury could have concluded that Boyce failed to keep a proper lookout. The statements of three witnesses could lead a reasonable jury to this conclusion. First, William Bailey testified that he watched the end of the pole move slowly toward the left until the vehicle operated by Boyce approached in the next lane and came between Bailey and the end of the pole. At that point, Bailey stated that "the pole was out there and the car ran into it." (Trial Tr. Excerpt of William Bailey at 9.) Second, Batzel testified that the vehicle of Stackhouse operated by Bell was straddling the line between the right turn lane and right through-travel lane. As the truck made its turn, the pole moved slowly to the left at the time Boyce approached the intersection. Batzel stated that "when we got to the intersection, I noticed [Boyce's] car go a little bit to the left and try to continue straight, and that's, when it was trying to continue straight, that was

18

the moment of impact." (De Bene Esse Dep. Tr. Katherine Batzel at 17.) Third, Boyce testified during her deposition, which was read to the jury, that she was not aware of the truck until the pole crashed through her windshield. (Dep. Tr. Deborah Boyce at 34.)

Based on this evidence, the jury could have concluded that Boyce failed to keep a proper lookout and that that failure was a proximate cause of the accident.

Defendant also alleges that the Court erred in granting the "proper lookout" instruction. The Court finds, however, that this instruction was properly given. To be entitled to a jury instruction, a party must put on more than a scintilla of evidence. *Yeary v. Holbrook*, 171 Va. 266, 287-88, 198 S.E. 441, 451 (1938). In this case, the testimony was sufficient to entitle the Plaintiffs' to this instruction.

The Defendant's Motion to Strike the Plaintiffs' Evidence, Motion for a Directed Verdict, and Motion to Set Aside the Jury Verdict are all denied. The Plaintiffs shall have judgment upon the jury's verdict.

September 16, 1997

The Court has reviewed and considered the briefs and argument of counsel on the issue of whether or not the Plaintiffs are entitled to postjudgment interest on the verdict of the jury wherein the jury found for the Plaintiffs Stackhouse, Inc., and Danny Alonzo Bell. It was understood and agreed that the jury would return a verdict either for the Plaintiffs or the Defendant without reference to a monetary amount.

The agreement between and among counsel limited the damages sought by the Plaintiffs, in effect, to the sum of $125,000.00, and the Court concludes that the maximum amount sought by the Plaintiffs was and is $125,000.00. However, the Court does not agree with the position of the Defendant that the agreement that the Plaintiffs would be limited to a figure of $125,000.00 means that the Plaintiffs are not entitled to postjudgment interest on the said sum of $125,000.00.

All counsel agreed that the ad damnum in the Motion for Judgment would be reduced to $125,000.00. No reference was made to interest thereon.

Virginia Code § 8.01-382 reads as follows:

Except as otherwise provided in § 8.3-122 [negotiable instruments] in any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any

principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. *The judgment or decree entered shall provide for such interest until such principal is paid.* If a judgment or decree be rendered which does not provide for such interest, the judgment or decree awarded shall bear interest from the date of its entry at a rate as provided in § 6.1-330.54, and judgment or decree entered accordingly; *provided if the judgment entered in accordance with the verdict of a jury does not provide for interest, interest shall commence from the date that verdict was rendered* [Emphasis added.]

There obviously is a distinction between prejudgment and postjudgment interest, and § 8.01-382 provides that prejudgment interest is basically discretionary by the jury or trier of fact, as the case may be, and that if postjudgment interest is not established by a jury or the trier of the fact that such interest "shall commence from the date that verdict was rendered." As indicated in the case of *Dairyland Ins. Co. v. Douthat*, "postjudgment interest is not an element of damages, but is a statutory award for delay in the payment of money actually due." 248 Va. 627, 632, 449 S.E.2d 779, 801 (1994) (citing *Nationwide Mut. Ins. Co. v. Finley*, 215 Va. 700, 702, 214 S.E.2d 129, 131 (1975)). In the *Dairyland Ins. Co.* case, the Supreme Court of Virginia further indicated as follows:

In *Finley*, an insurer providing UM coverage argued that it was not liable to pay postjudgment interest in excess of its policy limits. This Court disagreed, explaining that the statutory requirement of postjudgment interest is based on the liquidated nature of the debt owed by the insurer. *Id.*

Accordingly, the Court rules and concludes that the Plaintiffs Danny Alonzo Bell and Stackhouse, Inc., are entitled to interest on the verdict of the jury, which in effect was a verdict of $125,000.00, from the date of the verdict February 4, 1997, at the judgment rate of interest.