## Wytheville.

ROBINSON'S ADM'R v. DININNY.

JUNE 9, 1898.

Absent, Riely and Cardwell, J. J.

1. MASTER AND SERVANT—*Safe Place to Work—Duty of Master—Risks Assumed by Servant—Case at Bar.*—It is the duty of a master to use ordinary care and diligence to provide a reasonably safe place in which his servant is to work, considering the character of the work to be done, and for failure to do so he is liable for resulting injuries to the servant. The servant, however, assumes all the ordinary risks of the service in which he is engaged. He also, as a general rule, assumes all risks from causes which are known to him, or which should be readily discovered by a person of his age and capacity in the exercise of ordinary care. In the case at bar the method of doing the work was inhuman, there was a safer and better way to do it, and it was folly in the servant to engage in it, but the danger was open and obvious, and there can be no recovery against the master for the injuries to the servant.

Error to a judgment of the Circuit Court of Chesterfield county rendered March 1, 1897, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Charles L. Page* and *Leake & Carter*, for the plaintiff in error.

*B. T. Crump* and *Charles S. Stringfellow*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

It is a general principle of the law of master and servant that the master shall use ordinary care and diligence to provide a reasonably safe place in which his servant is to work, considering the character of the work in which he is engaged, and the master will be held liable for injuries to the servant which result from the omission to use such care. It is also a settled principle that a servant, when he enters the. service, assumes all the ordinary risks of such service. He also, as a general rule, assumes all risks from causes which are known to him, or which should be readily discernible by a person of his age and capacity in the exercise of ordinary care. *McDonald* v. *Norfolk & W. R. Co.*, 95 Va. 98; *Bertha Zinc Co.* v. *Martin*, 93 Va. 791; 1 Shearman & Redfield on Neg., sec. 185 (5th ed.).

The deceased was an employee or servant of the defendant and was engaged in cleaning out the shafts of an old coal mine. These shafts, two in number, had been sunk many years before to the depth of four hundred and fifteen feet. They were about thirty feet apart, and connected at the bottom by a tunnel. The shafts had not been used for thirty years or more. During that period they had been left uncovered and had been partially filled by caving in and otherwise. Prior to the accident in which the deceased lost his life the northern shaft had been cleaned out from the top, by pumping out the water, and by raising the earth, stones, and other material by rope and bucket. The tunnel had also been partially, if not entirely, opened from the bottom of the northern shaft to the bottom of the southern shaft.

The plan adopted by the defendant, through his superintendent, was to clean out the southern shaft from the bottom by digging out or removing the material in it, taking first that from the bottom of the shaft, and allowing that above to fall or sink down, and to remove the material thus taken out through the tunnel and up the northern shaft.

The evidence (and all the evidence in the case is that of the

plaintiff) as to the condition of the premises when the deceased came to his death is very meagre and unsatisfactory. But assuming that he was, as the plaintiff contends, engaged in cleaning out the southern shaft from the bottom, and that he was killed by material in it falling upon or rushing over him whilst so engaged, was not that danger so obvious and open that it was known to him, or was readily discernible by him? He had aided in cleaning out the northern shaft, and the tunnel. He must have known that if the foundation was removed upon which the immense mass of material which had collected in the southern shaft rested, there would be danger of its falling down and rushing out into the tunnel. The plan of cleaning out that shaft from the bottom was based upon the theory that the material in the shaft would fall down or force its way into the tunnel as the material at the bottom was removed. The deceased was nineteen years of age; was a man of ordinary capacity; had worked in coal mines, and had aided in cleaning out the northern shaft. He is presumed to have known the practical effects of the law of gravitation, and that when a mass of earth, stone, or other material is undermined by removing its foundation it is liable to fall. Such knowledge is not confined to experts. It is true that he had not before this been engaged in cleaning out an old shaft from the bottom, but it required neither skill nor science to inform him that material such as he had seen in the northern shaft would, when the substratum upon which it rested was removed, come to the bottom, and when it did come that anyone in the way of it would probably be injured. That work done in that way must be dangerous must be apparent to the commonest intelligence.

It is difficult to understand why any employer would be so inhuman as to have his work done in that way when there was a safer and better way to do it; or why any servant would be guilty of such folly as to work in a place where the danger of being injured was so obvious and so great.

But for injuries resulting from such inhumanity and such folly the courts can furnish no relief, the danger being obvious when the service is entered into. The judgment complained of must therefore be affirmed.

*Affirmed.*