98   692
106   `98
e106  676

98   692
107   559

98   692
108   453
108   456
108   825

98   692
110 · 268
f110  519

# Richmond.

SOUTHERN RAILWAY CO. v. MAUZY.

NOVEMBER 22, 1900.

Absent, Phlegar, J.*

1. EVIDENCE—*Expert Testimony—When Admissible—Loading Car-Wheels.*
   Expert testimony is not admissible as to matters within the common knowledge of men of ordinary intelligence and information. The fact of danger or safety in loading car-wheels in a particular mode is such a matter.

2. EVIDENCE—*Comparative Methods of Doing Work—Loading Car-Wheels.*
   The mode adopted by one railroad company of loading car-wheels cannot be given in evidence to charge another company with negligence for not loading in the same manner, though the general practice of railroads in doing like work and the comparative safety of different methods may be shown by competent evidence. The facts in this case do not warrant a departure from this rule.

3. MASTER AND SERVANT—*Safe Machinery.*—A master is not bound to furnish safe and sound machinery for the use of the servant. It is. his duty to use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the servant.

4. MASTER AND SERVANT—*Fellow-Servants—Case at Bar.*—The question. of fellow service is not determined by gradation in employment. The mere fact that one servant is superior in authority to another, with power to employ and discharge that other, does not have the effect of changing his relation of fellow-servant, unless his superiority places him in the category of vice-principal. In the case at. bar, the supposed vice-principal was aiding the plaintiff in doing the work, which was the proximate cause of his injury, and was his fellow-servant.

5. CONTRIBUTORY NEGLIGENCE.—There can be no recovery by a plaintiff whose contributory negligence was the proximate cause of his injury.

---

*This case was argued and submitted before Judge Phlegar qualified.

6. Master and Servant—*Risks Assumed.*—A servant, when he enters the service of the master, assumes all the ordinary risks of such service, and also, as a general rule, all risks from causes which are known to him, or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care.

Error to a judgment of the Circuit Court of Rockingham county, rendered October 25, 1899, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Downing & Richards,* for the plaintiff in error.

*Winfield Liggett* and *D. O. Dechert,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

This action was brought by Clarence H. Mauzy against the Southern Railway Company to recover damages for injuries alleged to have been sustained by him in consequence of the negligence of the defendant company. At the time of the accident in question, the plaintiff was an employee of the defendant, and was assisting other laborers in loading car-wheels upon a flat-car. The gravamen of the plaintiff's complaint is that the defendant negligently failed to provide safe and adequate appliances for doing the work in the usual and most approved method.

The court is of opinion that it was error to permit the witnesses, James Lewis, John Kelly and Joseph B. Newman, to testify, over the objection of the plaintiff, as to the best and safest mode of loading car-wheels on a flat-car. These witnesses were not shown to be experts, or to have had any such experience as would entitle them to express an opinion on the sub-

ject. Nor does it appear that expert testimony was necessary to explain or elucidate the subject under investigation. The question of danger or safety in loading car-wheels, in a particular mode, is one which any person of common intelligence and observation could as readily determine as the so-called expert. No principle of law is better settled than that the opinions of witnesses are in general inadmissible, that witnesses can testify to facts only, and not to opinions or conclusions based upon the facts. *Hanriot* v. *Sherwood*, 82 Va. 1; *Hammond* v. *Wood*, 41 Me. 177 (66 Amer. Dec. 219). To this general rule there are exceptions. The case at bar, however, does not come within their influence. In the valuable note to the case last cited (66 Amer. Dec. 228), it is said, with abundant authority in its support, that "the competency of expert testimony in a particular case depends upon the question as to whether or not any peculiar knowledge, science, skill or art, not possessed by ordinary persons, is necessary to the determination of the matter at issue;    *    *    *    *    that expert testimony is not admissible as to matters within the experience or knowledge of persons of ordinary information, as to which the jury are competent to draw their own inferences from the facts given in evidence before them, without extraneous aid other than the instruction of the court upon questions of law."

The court is further of opinion that it was error to permit the plaintiff, over the defendant's objection, to prove the mode adopted by the Baltimore and Ohio Railroad Company for loading car-wheels on a flat-car. A witness having sufficient knowledge may testify as to the general practice of railroads in doing the work in question, and the comparative safety of different methods, but it is not competent to show that the different method of another railroad is better than that of the defendant. It is supposed that in such matters even the skilful and experienced will frequently differ in their choice of instrumentalities. A party should not be adjudged negligent for not

conforming to some other method believed by some to be less
perilous. *Richmond Locomotive Works* v. *Ford*, 94 Va. 627.
Nor is this rule avoided or varied, as contended, by the fact that
the declaration alleges that the skids used by the defendant
company, at the time of the accident, were borrowed from the
Baltimore and Ohio Railroad Company, and that said company
employed other appliances in connection with such skids, when
loading a truck, or pair of car-wheels, on a flat-car; that being
the usual, approved and safe method of performing such work.
It was entirely competent to sustain the allegations of the
declaration by proof showing that the skids were borrowed from
the Baltimore and Ohio Railroad Company, and what, if any,
method was generally adopted by railroads as the best and safest
for accomplishing such work. Not a witness, however, was
asked as to the usual, approved and safe method of loading car-
wheels, generally employed, but the sole inquiry was as to the
practice adopted by the Baltimore and Ohio Railroad Company,
and the usual and ordinary method employed by that company
at Harrisonburg.

It appears that the defendant company, in loading car-wheels
on a flat-car, used "skids" joined by two rods and strengthened
by other braces. These skids were placed with one end on the
rails and the other on the flat-car, forming an inclined plane
up which the car-wheels were rolled by men pushing them from
behind. The Baltimore and Ohio Railroad Company, for the
same purpose, used skids of like character, placed in the same
manner, but instead of the car-wheels being pushed up the skids,
they were drawn up by means of a rope and chain, with one end
attached to the truck and the other to an engine. It is con-
tended that inasmuch as the defendant company borrowed the
skids from the Baltimore and Ohio Railroad Company, it was
the duty of the defendant company to get all the appliances
used by the Baltimore and Ohio Railroad Company for loading
car-wheels, and not to take a part thereof. This position is not

tenable. It appears that the mode of doing the work by the defendant company had been in general use throughout its service for many years; that the skids used on this occasion were in perfect condition; that said skids were a complete instrumentality in themselves, and not dependent upon the rope, chain and engine for their use. The defendant company was prosecuting the work in hand in its own accustomed way, and was under no obligation to use a rope, chain and engine because it found that the Baltimore and Ohio Railroad Company employed that method. The question is not what appliances were used by the Baltimore and Ohio Railroad Company, but whether the appliances furnished by the defendant were reasonably safe, sound and suitable.

The court is further of opinion that it was error to instruct the jury that one of the personal duties of the master was to furnish safe and sound machinery for the use of the servant. This imposes a much higher duty upon the master than the law imposes. It is a general rule of the law of master and servant, repeatedly laid down by this court, that the master shall use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant, and the master will be held liable for an injury to the servant which results from the omission to exercise such care and diligence. *Bertha Zinc Co.* v. *Martin*, 93 Va. 791; *Richmond Locomotive Works* v. *Ford*, 94 Va. 627; *McDonald* v. *N. & W. Rwy. Co.*, 95 Va. 98; *Robinson* v. *Dininny*, 96 Va. 41; *Va. & N. C. Wheel Co.* v. *Chalkley, ante* page 62.

The court is further of opinion that it was error to instruct the jury, "that if they believed from the evidence that D. W. Prettyman was the foreman of the locomotive department of the defendant company at the time of the injury to the plaintiff, with power to employ and discharge said plaintiff, then the said Prettyman was not a fellow-servant with the plaintiff, and any negligence on his part contributing to said injury does not

excuse the defendant from such liability in damages to the
plaintiff as the jury under the evidence thinks him entitled to
recover." The error of this instruction was in telling the jury
that if D. W. Prettyman was foreman of the locomotive depart-
ment with power to employ and discharge the plaintiff, then said
Prettyman was not a fellow-servant with the plaintiff.

The question of fellow-service is not determined by grada-
tion in employment. The mere fact that one servant is superior
in authority to another, does not have the effect of changing his
relation of fellow-servant, unless his superiority places him in
the category of vice-principal. *N. & W. Rwy. Co.* v. *Nuckols,*
.91 Va. 193; *Richmond Locomotive Works* v. *Ford,* 94 Va. 627;
*N. & W. Rwy. Co.* v. *Houchins,* 95 Va. 398.

In the case at bar, Prettyman was helping to load a pair of
car-wheels. He was not engaged in any one of the non-assign-
able duties of the master. Whatever he might be at some other
time and in some other connection, at the time of the accident
he was doing the work of a co-laborer with the plaintiff. To
furnish reasonably safe appliances being one of the non-assign-
able duties of the master, it may be conceded that Prettyman
was acting as vice-principal in borrowing the skids, but this was
not the proximate cause of the injury. The proximate cause
was getting in between the rails of the skids, which was done at
Prettyman's suggestion, and in accordance with his example.
In this, Prettyman was the fellow-servant of the plaintiff.
*Jackson* v. *N. & W. Rwy. Co.,* 43 W. Va. 380; 46 Lawyers'
Repts. Ann. 337.

The court is further of opinion that it was error to refuse to
instruct the jury that if they believed from the evidence that
the plaintiff contributed toward the accident of which he com-
plained, by his own negligence and carelessness, and that such
negligence and carelessness on his part was the proximate cause
of his injuries, and could have been avoided by the use of ordi-
nary care on the part of the plaintiff, then the defendant com-

pany is not responsible, and they must so find. No doctrine of the law is better settled than that which pertains to the question of contributory negligence It is needless to cite authority in its support. A recent case is *N. & W. Rwy. Co* v. *Marpole*, 97 Va. 594. The law was correctly stated in the instruction refused, was applicable to the facts of the case, and should have been given.

The court is further of opinion that it was error to refuse to instruct the jury that, if they believe that the work of loading wheels upon cars was such, as by the nature of his employment, the plaintiff might be called upon from time to time to perform, then the plaintiff assumed all ordinary risks incident to the discharge of his duty, and all risks from causes which were known to him, or which were open and obvious.

It is a well settled principle that a servant, when he enters the service of a master, assumes all the ordinary risks of such service; and, also, as a general rule, assumes all risks from causes which are known to him, or should be readily discernible by a person of his age and capacity in the exercise of ordinary care. *Bertha Zinc Co.* v. *Martin*, 93 Va. 791; *McDonald* v. *N. & W. Rwy. Co.*, 95 Va. 98; *Robinson* v. *Dininny*, 96 Va. 41.

In Shear. & Red. on Negligence, section 185, it is said that "a railway servant, employed to remove damaged cars to a repair shop, has no right to complain of injuries suffered from the known defects of such cars. And, where a business is obviously dangerous, and is conducted in a manner which is fully known to the servant at the outset, he assumes the risk of his conduct in that manner, although a safer method could have been adopted." It is contended that there was no evidence upon which to base an instruction involving the doctrine of assumed risk; that the plaintiff testified that he knew of no danger and suspected none, and that the defendant's witness, Prettyman, testified that he considered it a perfectly safe method of loading car-wheels. The plaintiff was asked: " Were you acquainted

with the danger?" etc., and replied, "No, sir; that was not in my mind. I only had in mind to do the work that I was told to do." It makes no difference that the danger was not in the plaintiff's mind, such thoughtlessness is negligence which cannot be charged to the defendant company. An obvious danger is one that is apparent to a person of ordinary intelligence. There is nothing in the record to suggest that the plaintiff was not a person of ordinary intelligence, and it is inconceivable that such a person would not know that the tendency of a heavy body, when elevated, is to fall, and that one in a position to be struck, if it should fall, runs a risk, and is in more or less danger. The companion who was with him between the skids, when the wheels had been elevated a certain height, recognized the danger, stepped aside, and escaped injury. We think that the instruction asked for, upon the question of assumed risk, was fully justified by the facts, and should have been given.

For these reasons the judgment of the Circuit Court must be reversed, the verdict set aside, and the cause remanded for a new trial to be had therein, not in conflict with the views herein expressed.

*Reversed.*