# CIRCUIT COURT OF THE CITY OF SUFFOLK

Kirk Timber & Farming Co.

    v.

Union Camp Corp.

    v.

Richard L. Turner,
Edna Brooks Saunders Turner,
Elizabeth N. Turner, and
James E. Turner, Jr.

    v.

Hunter Darden, III

August 15, 2001

Case No. (Law) CL97-170

BY JUDGE D. ARTHUR KELSEY

The plaintiff, Kirk Timber and Farming Company ("Kirk Timber"), has filed a motion *in limine* to exclude from trial expert opinions from six witnesses identified by Union Camp Corporation. The pretrial disclosure of these opinions, Kirk Timber argues, was both procedurally untimely and substantively insufficient. For the following reasons, the Court agrees with

Kirk Timber as to three of the six witnesses, and thus, excludes these three from offering any expert opinions at trial.[1]

Kirk Timber filed this case in March 1997 seeking damages for trespass and unauthorized cutting of timber in violation of Va. Code Ann. §§ 55-331 to 55-335 (Michie 1995). This statute sets up a "summary remedy for recovery," Va. Code Ann. § 55-331, to resolve disputed claims of timber overcutting. *See generally Porter v. Wilson*, 244 Va. 366, 371-72, 421 S.E.2d 440, 443-44 (1992). In the event the summary procedure fails to bring the dispute to closure, the injured party may collect treble damages upon a showing that the trespasser did not act prudently or under a *bona fide* claim of right. *See* Va. Code Ann. § 55-335. Claiming the summary remedy proved ineffectual in this case, Kirk Timber seeks treble damages against Union Camp.

Union Camp denies any liability for the overcut and asserts a third-party claim against Richard, Edna, Elizabeth, and James Turner, claiming that they sold Union Camp the timber rights in dispute. In the event Union Camp must pay damages to Kirk Timber, Union Camp contends, the Turners must indemnify Union Camp for these damages as well as its costs of defending this action. In reply, the Turners admit selling certain timber rights to Union Camp but deny that Union Camp stayed within the actual boundaries of the deeded area. The Turners also claim that Union Camp, in conjunction with Hunter Darden, III (an individual hired by the Turners to assist in the exercise), inaccurately marked off the boundaries of the deeded area. To the extent of their liability, the Turners assert a fourth-party motion for judgment against Darden.

On July 27, 1997, Kirk Timber served interrogatories on Union Camp seeking, among other things, the identification of any expert witnesses and a full disclosure of the substance and grounds of their specific opinions as required by Virginia Supreme Court Rule 4:1(b)(4)(A)(i). Interrogatory 13 required Union Camp to state "the precise field of such expert's expertise, the substance of the facts and opinion to which the expert is expected to testify, and a summary of the grounds for each such opinion." In September 1997, Union Camp responded with its interrogatory answers. In response to interrogatory 13, Union Camp provided a one-sentence reply: "Each person listed above [referring to the parties and three additional fact witnesses

---

[1] T. Kirk Pretlow of Pretlow, Eason & Pretlow represents Kirk Timber and Farming Company. William R. Savage, III, of Glasscock, Gardy & Savage represents Union Camp Corporation. Archer L. Jones, II, of Jones & Jones represents Richard, Edna, Elizabeth, and James Turner. James C. McCaa, III, of Taylor & Walker represents Hunter Darden, III.

identified in earlier answers] may give expert testimony on issues of survey timber values or legal title." No mention was made then, or in any later supplemental answer, of what those specific opinions might be.

In June 2000, dissatisfied with the sufficiency of Union Camp's discovery responses, Kirk Timber filed a motion to compel and a request for sanctions on the grounds that (i) Union Camp failed to provide complete answers to the July 1997 interrogatories, and (ii) Union Camp failed to provide any answers at all to a second set of interrogatories served on April 7, 2000. *See* Notice ¶¶ 4-11 (June 7, 2000). Judge Rodham T. Delk granted the motion from the bench, but the parties were later unable to agree on the wording of an order to submit to the Court for entry.

In June 2000, the Court issued a pretrial order setting the trial date for December 20, 2000, and requiring that all discovery "shall be concluded no later than 20 days prior to the trial date." Order of June 21, 2000 (Kelsey, J.). Prior to the expected December 20 trial, Union Camp wrote to the clerk of court requesting trial subpoenas for eleven witnesses. *See* Savage Letter to Murden (Nov. 22, 2000). Copies of the letter were mailed to counsel of record, with a two-line "P.S." stating: "All Counsel: Please accept this as supplemental answers to interrogatories. If you need a more formal response, please let me know." The letter, however, never identified which of the eleven witnesses would be offered as expert witnesses at trial. Nor did Union Camp disclose any specific expert opinions these witnesses may offer at trial or the factual basis for such opinions.

Several days later, Union Camp's counsel acknowledged that Kirk Timber had requested a supplement to Union Camp's "previous responses to interrogatories." Savage Letter to Pretlow (Nov. 28, 2000). Union Camp's counsel went on to state: "As a supplement to your interrogatories propounded July 25, 1997, we would offer the following. . . ." *Id.* The letter then addressed interrogatory 7 (seeking facts regarding boundary lines), interrogatories 10 and 11 (seeking information about proffered legal defenses), and interrogatory 15 (requesting the identity of trial exhibits). The letter also discussed a second set of interrogatories, none dealing with expert witnesses. A few days later, Kirk Timber requested trial subpoenas for various witnesses, including a few previously requested by Union Camp. *See* Pretlow Letter to Murden (Dec. 1, 2000).

The parties thereafter presented a consent order continuing the trial due to the unavailability of a witness. *See* Order of Jan. 11, 2001 (Kelsey, J.). The Court rescheduled the trial for August 27, 2001, and issued a Uniform Pretrial Order pursuant to Virginia Supreme Court Rule 1:18. The Pretrial Order superseded the earlier order (requiring discovery to be completed at least 20

days prior to the December 20, 2000, trial) and specifically ordered that expert disclosures be made by Kirk Timber no later than 90 days prior to the new trial date of August 27, 2001, and by Union Camp no later than 60 days prior to the new trial date. The Pretrial Order made clear that, if requested, "all information discoverable under Rule 4:1(b)(4)(A)(1) of the rules of Supreme Court of Virginia shall be provided or the expert will not ordinarily be permitted to express any non-disclosed opinions at trial." Pretrial Order of Dec. 29, 2000 (Delk, J.). The Pretrial Order also clarified that the 90/60-day deadlines did not otherwise lengthen any timeliness duty "to supplement or amend prior responses pursuant to Rule 4:1(e)." *Id.*

On June 27, 2001, Union Camp filed a "Designation of Defendant's Expert Witnesses" pursuant to the Pretrial Order. The Designation identified ten individuals as experts and gave their addresses. Once again, however, Union Camp failed to state what expert opinions these witnesses would give at trial or the factual grounds for such opinions. *See* Va. Sup. Ct. R. 4:1(b)(4)(A)(i).

Kirk Timber thereafter filed a motion *in limine* seeking to exclude expert opinions from these witnesses. Though the written motion sought to exclude all ten witnesses, Kirk Timber at the oral argument withdrew its motion with respect to four of them, Hunter Darden, III, Stephen Lee Clark, Kenny Edwards, and Jim Mackenzie. As to the remaining six witnesses, Kirk Timber argues that Union Camp violated both (i) its duty to supplement interrogatory 13 issued in July 1997, and (ii) the 60-day pretrial deadline imposed by the Pretrial Order. On these grounds, Kirk Timber seeks an order precluding opinion testimony from being offered by the witnesses identified by Union Camp as its trial experts. *See* Pretrial Order, § III, at 1-2 (Dec. 29, 2000) (Delk, J.); Va. Sup. Ct. Rules 4:12(d)(2) and 4:12(b)(2)(B) (trial court may prohibit offending party from "introducing designated matters in evidence").

Union Camp's counsel responds with the assertion that, in accord with his usual custom, he provided Kirk Timber's counsel with a list of witnesses in the pretrial subpoena request letter. And "in those instances in which [the opposing party] wants to know more about a particular witness," Union Camp's counsel explains, he would then provide further supplementation. *See* Memorandum of Union Camp in Opposition to Plaintiff's Motion to Exclude Expert Testimony 2 (July 31, 2001). Union Camp also argues that, at least with respect to three of the disputed witnesses, Rebecca R. Habel, Stephen E. Lindberg, and John C. Smith, Kirk Timber had earlier received written reports disclosing the specifics of their opinions.

Under settled principles, the scope of discovery "with respect to the 'facts known and opinions held by experts . . . in anticipation of litigation' is

restricted by the proviso that such facts and opinions 'may be obtained *only*' by following the procedures set forth in subsections (A), (B), and (C) of Rule 4:1(b)(4)." *Flora v. Shulmister*, 262 Va. 215, 222, 546 S.E.2d 427, 430 (2001) (emphasis in original). Rule 4:1(e) imposes on each litigant "a duty to supplement" interrogatory answers when the party learns that in some material respect his prior answers are either incomplete or inaccurate. The duty does not go so far, however, as to include information already "made known to the other parties during the discovery process or in writing." Va. Sup. Ct. Rules 4:1(e)(1) and (e)(2).

Because the timing of the duty to supplement frequently creates insufferable arguments over who knew what when and why it took so long to disclose it, courts use pretrial orders to mark the outer boundaries of the duty to supplement. *See Civil Discovery in Virginia* § 9.3, at 187 (Virginia Law Foundation 2000). Rule 1:18 authorizes trial courts to issue pretrial orders that, among other things, set deadlines on the duty to supplement expert interrogatories. The Uniform Pretrial Order requires not merely the identification of the expert by name but also the specifics of the expert's opinions and a summary of the factual grounds underlying these opinions. *See* Form 3 of Va. Sup. Ct. Rule 1:18(B); Va. Sup. Ct. Rule 4:1(b)(4)(A)(ii); *see generally Woodbury v. Courtney*, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990) ("The purpose of the order was to allow the litigants to discover the expert witnesses' opinions in preparation for trial.").

The Pretrial Order also makes clear that it does not supersede "the Rules of Supreme Court of Virginia governing discovery." Form 3, § II, of Va. Sup. Ct. Rule 1:18(B). It reminds the parties that they "have a duty to seasonably supplement and amend discovery responses pursuant to Rule 4:1(e) of the Rules of Supreme Court of Virginia." *Id.* "Seasonably means as soon as practical." *Id.* Thus, the deadlines in the Pretrial Order serve as ultimate limits. Depending on the circumstances, the duty to supplement required by Rule 4:1(e) may nonetheless require an earlier disclosure.

In this case, Kirk Timber received written reports (either from the witnesses directly or from the third or fourth-party defendants) disclosing the opinions of Rebecca R. Habel, Stephen E. Lindberg, and John C. Smith. The receipt of these written reports falls within the caveat of Rules 4:1(e)(1) and (e)(2), which treats the duty to supplement as constructively satisfied in those situations where the "additional or corrective" information has already been "made known to the other parties during the discovery process or in writing." Any otherwise admissible expert opinion from these witnesses, however, will be strictly limited to the disclosures made in these reports. In addition, having not been presented with copies of these reports by either Union Camp or Kirk

Timber, the Court will reserve until trial the question whether any ostensible opinion in the reports should be excluded as too vague and indefinite to satisfy the specificity requirements of Rule 4:1(b)(4)(A)(i) and the Pretrial Order.

With respect to the three remaining witnesses identified as experts, George T. Parker, M. K. White, III, and W. L. Bangley, Jr., Union Camp has violated both the timeliness standards inherent in Rule 4:1(e) as well as the final deadline imposed by the Pretrial Order. Union Camp's answer to interrogatory 13 identified no specific expert opinions or the factual grounds for any opinions for these witnesses, neither did Union Camp's letter to the clerk of court requesting trial subpoenas. And even after Kirk Timber requested that Union Camp supplement discovery prior to the first scheduled trial date, Union Camp provided nothing in the way of expert opinion disclosures. To make matters worse, after the Court continued the trial and entered a Pretrial Order directly addressing the issue of expert disclosures, Union Camp still failed to provide a supplemental response to interrogatory 13.

Union Camp seeks to deflect attention from its own neglect by accusing Kirk Timber of gamesmanship. According to Union Camp, Kirk Timber's counsel somehow maneuvered Union Camp into becoming an innocent victim of a game of "Gotcha" by using the court-imposed deadlines as a "trap or trick" to prevent Union Camp from receiving a fair trial. *See* Memorandum of Union Camp in Opposition to Plaintiff's Motion to Exclude Expert Testimony at 3 (July 31, 2001). After all, Union Camp points out, Kirk Timber could have deposed any of these witnesses and debriefed each about the specifics of any expert opinions they held. *Id.*

Union Camp's effort at blame shifting falls flat for several reasons. Kirk Timber has no ethical or legal duty to ask itself, "Well, if Union Camp were to make expert disclosures, what would they be?" Both Rule 4:1(b)(4)(A)(i) and the Pretrial Order place the burden on Union Camp to make the expert disclosures, not on Kirk Timber to speculate about what those disclosures might be. As for the you-should-have-taken-their-depositions argument, Union Camp simply misses the point. Depositions of experts usually occur, at least when done competently, *after* the expert has been identified and his opinions disclosed. *See Civil Discovery in Virginia* § 9.3, at 188 (Virginia Law Foundation 2000). Indeed, depending on the specific opinion proffered, experienced litigators may choose to forgo depositions of experts (particularly given the fact that depositions of experts are not a matter of right). Rule 4:1(b)(4)(A)(ii) permits the trial court to "order further discovery by other means" (that is, other than mere interrogatories) upon the motion of any party. While expert depositions may be routine, the regularity of the practice should

not lead to the mistaken assumption that it is a matter of right. *See, e.g. Abujaber v. Kawar*, 17 Va. Cir. 398 (Loudoun 1989) (testimony of real estate appraiser not sufficiently complex to warrant an expert deposition). Consequently, Kirk Timber cannot be faulted for not deposing every witness on Union Camp's subpoena request letter and ferreting out the expert opinions Union Camp intended to use at trial.

In sum, Union Camp's arguments cannot overcome the error of its first premise. No party can satisfy his duty to supplement an expert interrogatory by providing his opponent with a long list of witnesses on a subpoena request letter just prior to trial (without even noting which were fact and which were expert) with the "P.S." aside that, upon an additional request, more information would be forthcoming. However else such a practice could be characterized, suffice it to say, it cannot be squared with basic and longstanding discovery principles governing the disclosure of expert opinions.

Having found Union Camp in default on its duty to disclose the expert opinions of George T. Parker, M. K. White, III, and W. L. Bangley, Jr., the question remains whether an exclusion of these opinions or some lesser remedy should result. When enforcing an expert disclosure deadline of a pretrial order, a trial court has "broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery." *Woodbury v. Courtney*, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990) ("Five months is more than sufficient time for a litigant to identify expert witnesses."); *City of Hopewell v. County of Prince George*, 240 Va. 306, 314, 397 S.E.2d 793, 797 (1990) (court properly refused expert opinions provided on the "eve of trial").

Rule 1:18's Uniform Pretrial Order, used in this case, warned that experts "will not *ordinarily* be permitted to express any non-disclosed opinions at trial." Pretrial Order of Dec. 29, 2000 (Delk, J.) (emphasis added). This admonitory advice tracks the trial court's authority to prohibit parties in breach of the discovery rules from "introducing designated matters in evidence." Va. Sup. Ct. Rules 4:12(b)(2)(B) & 4:12(d)(2). To determine if this is an ordinary case (where the non-disclosed opinion should be excluded) or the extraordinary case (where it should not), at least five factors should be taken into account:

(i) the "surprise" to the other party;
(ii) the ability of the offending party to "cure that surprise";
(iii) the possibility that the "testimony would disrupt the trial";
(iv) the party's "explanation" for not providing a timely disclosure; and

(v) the alleged "importance" of the testimony.

*Rambus, Inc. v. Infineon Technologies A.G.*, 145 F. Supp. 2d 721, 726-27 (E.D. Va. 2001) (Payne, J.); *see also Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 369-70 (4th Cir. 1986).

These five factors predominate against Union Camp. On the first factor, surprise, Kirk Timber contends it has been caught off-guard by the recent identification of these experts after nearly four years of silence on this subject from Union Camp. Compounding that surprise — and continuing the suspense up until the present — is the more important fact that no specific opinions have been disclosed. In reply, Union Camp contends that Kirk Timber should have anticipated the need for Union Camp to use these experts at trial and should intuitively understand what they would say on the stand. This argument, however, proves too much. To some degree, every good lawyer can guess at his opponent's trial strategy and predict which witnesses (lay and expert) might be called to advance that strategy. But that, of course, was the whole point of the expert disclosure rules: to eliminate the guesswork and to require the parties to state clearly what specific expert opinions would be offered at trial.

Kirk Timber's surprise stems from its reasonable assumption that, though listed on a subpoena request letter, these witnesses would give only fact testimony. And in the event Union Camp intended to use any of them as experts, Kirk Timber rightly assumed, their specific opinions would be disclosed within a reasonable amount of time after the July 1997 interrogatories and in no event later than the expert disclosure cutoff in the Pretrial Order. That Kirk Timber knew about the identity of these witnesses does not at all mean that it should have anticipated that any of them would provide expert opinions at trial for Union Camp. Nor can Union Camp demonstrate that Kirk Timber should somehow be able to (or, more to the point, be required to) assume what these specific expert opinions would be.

The second factor, Union Camp's ability to "cure" the surprise, also favors Kirk Timber. In an apparent effort at such a cure, Union Camp attempted (after receiving Kirk Timber's motion *in limine*) to answer the July 1997 interrogatory for each of these experts. In material respects this effort serves only to underscore Union Camp's minimalist view of its discovery obligations. Union Camp says these witnesses will offer expert opinions regarding "the valuation of the timber," the general "standards in the industry as to the marking of property lines" for timberlands, and the "practices in the industry to avoid an overcut." Savage Letter to Pretlow at 2 (July 26, 2001); Savage Letter to Pretlow at 3-4 (July 27, 2001). Union Camp, however, never

states what the specific "valuation" opinions will be, or for that matter, what specific "standards" and "practices" would be described by the experts. Union Camp's attempt at a cure is itself inadequate, and indeed, would fail to qualify even as an adequate proffer under ordinary evidentiary principles. In the absence of a reasonably specific proffer, neither the trial court nor the appellate court can address a litigant's objection to the exclusion of evidence. *See Durant v. Commonwealth*, 35 Va. App. 459, 466, 546 S.E.2d 216, 220 (2001) (expert opinion must be specifically proffered).

The third factor, the potential disruption of the trial, should be viewed in the broader context. In cases where, as here, the ostensible cure comes after the discovery cutoff, the innocent party faces the Hobson's choice of seeking a continuance or putting its pretrial preparation efforts into double-time. In this case, the first option disrupts the trial scheduled for August 27, and the second option throws Kirk Timber into a costly, last-minute "full-court press" during the "last few days" of the pretrial period. *Thibeault v. Square D Co.*, 960 F.2d 239, 247 (1st Cir. 1992). Either option could easily generate motions for expert depositions, motions to compel more specific disclosures, as well as any number of other hurried legal contests over the admissibility of their opinions. Union Camp's cure, therefore, puts the trial date as well as the orderly nature of the pretrial schedule in jeopardy.

Union Camp does not argue that the Court should consider continuing the trial as a lesser remedy. Even if it did, however, the Court would view the request with disfavor. It can always be said that a trial court "rather than barring the evidence, could have done justice merely by postponing the trial." *Thibeault*, 960 F.2d at 246. But that point overlooks the fact that "a continuance is often ineffectual as a sanction and unfair to both the court and the opposing party. If continuances were granted as a matter of course for violation of [the discovery rule], the rule could always be disregarded with impunity. Courts could not set their calendars and conscientious litigants could not count on the stability of trial dates previously established." *Id.* (citations omitted). That is especially true where, as here, "there was no good cause" for the untimely disclosures. *Id.* at 247; *see also Serrano-Perez v. FMC Corp.*, 985 F.2d 625, 628-29 (1st Cir. 1993).

The fourth factor, Union Camp's explanation for its actions, causes as much concern as any other. Even at this late date, Union Camp appears to believe that it had no obligation to provide a specific answer to the July 1997 expert interrogatory other than to chastise Kirk Timber for not figuring it out on its own. According to Union Camp's counsel, his practice is simply to identify witnesses generally (often in a subpoena request letter) and, upon doing so, he thereby shifts the burden to the other side to let him know if he

needs to say more. Union Camp's counsel does not describe his actions as a case of excusable neglect, but rather as the preferred method of addressing the subject of pretrial expert disclosures. Union Camp's explanation amounts to little more than a personal dislike for the discomforting structure of the discovery rules and a policy of doing as little as possible to comply with them.

The fifth factor, the importance of the testimony, cannot be easily judged. Given the vague description of testimony about timber-cutting practices and the reference to unexplained valuation methods, the Court has no way to discern if the testimony should be either discounted as cumulative or viewed as essential to understanding the case. To be sure, Union Camp's attempted proffer of the testimony fails to provide enough detail to know what these witnesses would actually say at trial. This final consideration, coupled with the other four, satisfies the Court that this case should not be exempt from the proposition that untimely expert disclosures "ordinarily" should be excluded from trial. *See* Pretrial Order of Dec. 29, 2000; Form 3 of Va. Sup. Ct. Rule 1:18(B).

As to George T. Parker, M. K. White, III, and W. L. Bangley, Jr., Union Camp has breached both the timeliness standards inherent in Rule 4:1(e)'s duty to supplement as well as the deadline for expert opinion disclosures imposed by the Pretrial Order. Having weighed the discretionary factors governing the exclusion remedy, the Court agrees with Kirk Timber and grants in part the motion *in limine*. No expert opinions from these three witnesses will be admitted at the trial of this case on August 27, 2001. It is so ordered.

The ruling, however, has no effect on the admissibility of factual testimony offered by these witnesses regarding the general practice in the timber industry for boundary marking and overcutting precautions. *See generally Southern Railroad Co. v. Mauzy*, 98 Va. 692, 694, 37 S.E. 285, 286 (1900) (lay witness can offer factual testimony about the "general practice" in the industry, but not expert opinions about one practice being "better" than another); *see also Richmond Locomotive & Machine Works v. Ford*, 94 Va. 627, 627, 27 S.E. 509, 510 (1897). The "custom in a particular trade" may be relevant to determine the reasonableness of a litigant's conduct. Charles E. Friend, *The Law of Evidence in Virginia*, § 12-13(c), at 420 (5th ed. 1999).